UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MARY KAY INC., § | |
| § | |
| Plaintiff, § | |
| v. § | |
| § | C.A. NO.: |
| JENNIFER BICKEL COOK, § | |
| § | DEMAND FOR JURY TRIAL |
| Defendant. § | |

**COMPLAINT FOR DAMAGES, INJUNCTIVE, AND OTHER RELIEF FOR
VIOLATION OF 17 U.S.C. § 501, 15 U.S.C. § 1125(a), AND RELATED CLAIMS**

Plaintiff Mary Kay Inc. ("Mary Kay") brings this action against Defendant Jennifer Bickel Cook ("Cook") for: (1) copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501; (2) false endorsement in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) breach of contract under Texas common law; (4) misappropriation under Texas common law; (5) breach of fiduciary duty under Texas common law; and (6) tortious interference with existing contracts and business relationships under Texas common law. These claims arise from the misappropriation of Mary Kay's intellectual property and proprietary information in connection with the publication of the book, *Pass It On: What I Learned from Mary Kay Ash* (the "Book"), in which Cook repackaged Mary Kay's copyrighted books and sold the resulting collection as her own book. As a result of Cook's misappropriation, consumers are likely to be confused and wrongly believe that the Book is sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay. In support of its complaint, Mary Kay alleges as follows:

**INTRODUCTION**

1. Cook occupied a position of the highest trust and confidence at Mary Kay for more than four decades. She served as the personal assistant to Company founder Mary Kay Ash and

later acted as Director of the Mary Kay Museum and the Mary Kay Foundation. Unfortunately, after her retirement from the Company, Cook used relationships and information gained in her former positions for her own benefit—and to the detriment of Mary Kay and its independent beauty consultants ("IBCs")—by misappropriating Mary Kay's intellectual property and proprietary information, by misleading others about her continuing association with Mary Kay, and by persuading members of the Mary Kay independent sales force ("Sales Force Members") and others to promote, distribute and sell the Book to Mary Kay's IBCs on social media and at live events by making them believe that Mary Kay supported and/or endorsed the Book.

2. In late September 2021, Mary Kay learned for the first time that Cook planned to publish the Book, that it would likely contain Mary Kay's intellectual property and proprietary information, and that its publication date was just days away, on October 5, 2021. Mary Kay learned about the Book after Cook emailed an administrative assistant who worked for Mary Kay on September 24, 2021 asking for answers to questions about current Company information in advance of an interview she was providing a media outlet to promote the Book. Mary Kay requires that creative works by current or former employees be "personal" and "original," and that the work, if it includes Company information, be submitted to Mary Kay for review and approval as to the content, form, and the proposed method of distribution. Mary Kay adopted this rule to protect its intellectual property and, just as importantly, to safeguard Mary Kay's many IBCs, many of whom might wrongly believe that they are expected to purchase Mary Kay branded merchandise or creative works.

3. Mary Kay immediately asked Cook to provide a copy of the Book so that Mary Kay could review the contents. Although Cook promised that she would provide copies of the Book, she never did. Mary Kay's outside counsel only received a PDF copy of the Book on

October 4, 2021—one day before the Book's publication date. Only then did it become clear why Cook was so hesitant to provide the Book to Mary Kay before its publication: Cook's Book is both replete with Mary Kay's copyrighted works (containing no more than two to three chapters of original content about Cook's own experiences and recollections) and appears designed to confuse consumers into thinking the Book is endorsed, sponsored, or approved by Mary Kay. Worse yet, Cook already began to market the Book to Sales Force Members by suggesting that Mary Kay endorsed the Book, planning to appear at Sales Force Member events, and using the Sales Force Members to promote, distribute and sell the Book for her. In light of this conduct, Mary Kay brings the following claims:

4. **Cook violated federal copyright laws by copying Mary Kay-owned copyrighted works**: Mary Kay holds the copyrights to three books and a calendar of quotes written by its founder Mary Kay Ash (the "Copyrighted Works"). In the Copyrighted Works, Mary Kay Ash tells the story of how she came to be one of America's foremost women entrepreneurs and provides advice for others hoping to achieve the same success. The Book basically summarizes the contents of the Copyrighted Works—other than approximately two to three chapters of material regarding Cook's own experiences—and even copies *verbatim* entire passages from the Copyrighted Works. Cook never asked permission to use the Copyrighted Works, and even tried to forestall Mary Kay from reviewing the Book before its publication.

5. **Cook violated the Lanham Act by creating a false endorsement:** Cook also sought to make it appear as though Mary Kay (and its founder Mary Kay Ash) endorsed the Book. The title expressly includes Mary Kay Ash's name, and its cover is a pink similar to the Company's well-recognized "Mary Kay Pink" and the color pattern Mary Kay Brand introduced during Cook's employment. The Book includes a 15-page section of photographs of Mary Kay corporate events

dating back to 1972 (before Cook even joined Mary Kay). Cook also has clearly marketed the Book as being associated with Mary Kay, touting her own work at Mary Kay and her relationship with Mary Kay Ash in the Book's promotion, particularly as she has attempted to use Mary Kay's sales force to promote, distribute and sell the Book.

6. **Cook breached her fiduciary duty to Mary Kay, violated her Non-Disclosure Agreement, and misappropriated Mary Kay's proprietary information.** Cook owed fiduciary and contractual duties to Mary Kay to protect its proprietary information. She breached those duties by, among other things, creating the Book to compete against Mary Kay's own books that contain the same photos and stories, and by accessing Mary Kay's photographs in her role as Director of the Mary Kay Museum and/or from soliciting such photographs from Mary Kay IBCs and representatives in that same role. She also breached those duties by misappropriating Mary Kay's proprietary information for her own benefit, to Mary Kay's detriment.

7. **Cook intentionally and tortiously interfered with Sales Force Members' Contracts:** Finally, Cook used her position of trust with the Company and years of contacts at Mary Kay to convince Sales Force Members that Mary Kay endorsed and/or supported the Book and thus persuaded Sales Force Members to promote, distribute, and sell the Book. Because of Cook's conduct, Sales Force Members unwittingly agreed to let her attend sales force events, causing a situation where the members were violating the terms and conditions of their agreements with Mary Kay. Cook, who is well aware of the terms of those contracts, has intentionally encouraged these violations and failed to clarify that the Book was not in fact supported or endorsed by Mary Kay. Mary Kay closely polices these contractual provisions to protect its independent sales force, who might otherwise feel pressure to purchase Mary Kay branded products, due to just this sort of targeted solicitation.

8. Through this lawsuit, Mary Kay seeks to stop the solicitation of its sales force to promote, distribute and sell the Book and to prevent Cook from profiting from her copying and misuse of Mary Kay's Copyrighted Works and the Mary Kay brand.

## PARTIES

9. Mary Kay is a corporation, organized under the laws of the State of Delaware, with its principal place of business located at 16251 Dallas Parkway, Addison, Texas, 75001.

10. Jennifer Bickel Cook is a natural person. Mary Kay is informed and believes, and on that basis alleges, that she resides at 618 Hartin Circle, Irving, Texas, 75061.

## JURISDICTION

11. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, 28 U.S.C. § 1338, and 28 U.S.C. § 1367. Mary Kay's federal claims are predicated on 17 U.S.C. § 501 and 15 U.S.C. § 1125(a), and its claims arising under the laws of the State of Texas are substantially related to its federal claims such that they form part of the same case or controversy under Article III of the United States Constitution.

12. This Court has specific personal jurisdiction over Cook because Cook is a resident of the State of Texas and the Northern District of Texas.

13. Venue is properly founded in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Mary Kay's claims occurred within this judicial district, or in the alternative because the Cook is subject to specific personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

A. **Mary Kay and Its Intellectual Property**

14. Mary Kay is a global manufacturer and wholesale distributor of cosmetics, skin care products, toiletries, and other related products. Mary Kay's products are sold in over thirty-

five countries, including the United States ("U.S."), and the Mary Kay brand is recognized for its quality worldwide.

15. Mary Kay devotes a significant amount of time, energy, and resources to protecting the value of its brand, products, name, and reputation. Mary Kay products are promoted to consumers on its MaryKay.com website, print and digital catalogues and various social media sites, among other media. Mary Kay products are sold to the public exclusively through Mary Kay IBCs, which currently number approximately 500,000 in the U.S. IBCs market these products direct to consumers utilizing, among other direct sales methods, personal websites accessed through MaryKay.com where customers can shop, browse, and communicate directly with their IBCs.

16. To promote and protect its intellectual property rights, Mary Kay has registered numerous copyrights and trademarks with both the U.S. Copyright Office and U.S. Patent and Trademark Office, respectively, and has maintained the confidentiality of its trade secrets and other confidential information (collectively, the "IP"). Relevant to this dispute, Mary Kay has registered the following Copyrighted Works with the U.S. Copyright Office:

- *You Can Have It All*, Copyright Reg. No. TX0004412762, from November 1, 1996;
- *Mary Kay*, Copyright Reg. No. TX0000842917, from January 25, 1982 (later renamed *Miracles Happen*);
- *On People Management*, Copyright Reg. No. TX0001449374, from November 6, 1984; and
- *Words of Wisdom* calendar of quotes, Copyright Reg. No. TX0006371107, from April 19, 2006.

17. In the Copyrighted Works, founder Mary Kay Ash tells the story of her success and how she become one of America's foremost businesswomen.

### B. Cook's Agreements with Mary Kay

18. Cook held various positions with Mary Kay from approximately 1974 through July 1, 2017, through which she gained access to or knowledge of Mary Kay's proprietary information, including in her role as personal assistant to Company founder Mary Kay Ash. Cook's last position as Director of the Mary Kay Museum involved curating, documenting and organizing information, stories, photographs and documents relating to Mary Kay and Mary Kay Ash. Cook also was Director of the Mary Kay Foundation and paid by Mary Kay to attend independent sales force events, where she told stories to promote the legacy of Mary Kay Ash and gained access to the personal information of Mary Kay's independent sales force.

19. During her employment, Cook agreed to the terms of a Non-Disclosure Agreement (the "NDA") and to Mary Kay's internal code of conduct (the "Employee Handbook") in exchange for having access to Mary Kay's proprietary information. In exchange for these rights, Cook agreed that she would not use proprietary information for her own benefit (or the benefit of anyone else) and would not disclose that proprietary information to anyone else, even after her employment with Mary Kay ended. In the NDA, Cook acknowledged that her position with Mary Kay was "one of highest trust and confidence" given her access to Mary Kay's proprietary information, and she also agreed that she would not use that information for her own benefit (or the benefit of anyone else) and would not even disclose that information to anyone else. (*See* NDA, ¶¶ 2 & 3.)

20. The Employee Handbook also prohibited Cook from "using the Company's logos, photos, trademarks, copyrights or any other intellectual property without the authorization of Mary Kay Inc." (*See* Employee Handbook, pg. 16.)

21. Through her years of employment at Mary Kay, Cook became aware that Mary Kay's standard agreements with its Sales Force Members prohibited those Sales Force Members from distributing, promoting, or selling Mary Kay branded merchandise that was not approved by Mary Kay.

**C. In September 2021, Mary Kay Learned About the Book And Tried, Unsuccessfully, to Obtain a Copy to Review**

22. In September 2021, Mary Kay learned that Cook planned to publish what she described as a memoir about her experiences with Mary Kay Ash that could possibly contain Mary Kay's proprietary information and other IP, and that the publication date was October 5, 2021; only shortly thereafter.

23. Starting on September 27, 2021, Mary Kay made multiple requests that Cook provide a copy of the Book to Mary Kay so that Mary Kay could assure itself that Cook had not improperly used any of Mary Kay's proprietary information or other IP. Mary Kay requires that creative works by current or former employees are "personal" and "original," and, if the works included Company information, that such works be submitted to Mary Kay for review and approval as to the content, form, and the proposed method of distribution. Mary Kay has this rule to protect its IP and to guard against individuals taking advantage of Mary Kay's IBCs, who may wrongly believe that they are required to purchase Mary Kay branded merchandise or creative works.

24. Although Cook at first promised that she would drop off copies of the Book by September 29, 2021 (less than a week before its planned publication date), she did not do so.

25. On September 29, 2021, Mary Kay's outside counsel wrote to Cook and her publisher. Mary Kay asked, among other things, that Cook provide it with a copy of the Book by no later than 5:00 PM the following day; that her publisher delay the publication of the Book until Mary Kay had a chance to review it to determine if it contained any of its proprietary information; and that Cook agree not to contact any IBCs to ask that they promote the Book in violation of their contracts with Mary Kay.

26. Cook did not respond until late afternoon on Friday, October 1, and the email misspelled outside counsel's email address such that counsel did not receive the email until Monday, October 4 (one day before the Book's publication date). In that email, Cook's representative provided a PDF of the Book, and that was the first time Mary Kay had an opportunity to review its contents.

**D. The Book Copies Wholesale Portions of the Copyrighted Works**

27. The Book was published on October 5, 2021. Upon information and belief, Cook intentionally withheld the Book from Mary Kay prior to its publication, despite Mary Kay's multiple efforts to receive a copy and warnings that the Book might contain Mary Kay's IP, because she wanted to delay Mary Kay's discovery of her use of its IP until after the Book was published.

28. The Book contains *verbatim* passages from pre-existing, Mary Kay-owned publications, and includes stories Cook was paid to tell at Mary Kay-sponsored events and curate for the Mary Kay Museum during her employment, as opposed to stories deriving from Cook's personal knowledge or interactions with Mary Kay Ash.

29. A review of the "End Notes" to the Book shows that Cook has access to – and indeed copied from – Mary Kay's Copyrighted Works, including copying portions of: (a) *You Can*

*Have It All* in seven chapters, (b) *Mary Kay* in five chapters, and (c) *On People Management* in three chapters, among other Copyrighted Works. Attached hereto as Appendix A is a selection of examples of Cook's copying.

30. Cook combined passages and stories from the Copyrighted Works and turned them into a new collection that she is passing off as a new book of "her" memoir and lessons "she" learned. In fact, the Book contains just two to three chapters of original content—Cook's personal thoughts and observations—and the remaining chapters are paraphrases or verbatim copies of the Copyrighted Works and of stories Cook gathered from employees and members of the Mary Kay independent sales force as part of her role as Director of the Mary Kay Museum. As but one example, Cook repeats the same story in the Book (*see* pages 12-13) that appears in the section "Lighten Up" from Mary Kay's *You Can Have It All*.

31. Cook never asked permission of Mary Kay to use the Copyrighted Works (much less copy entire passages wholesale) and, as noted above, tried to forestall Mary Kay from reviewing the Book.

32. Through her advertisement and sales of the Book, Cook is infringing Mary Kay's IP, and Mary Kay has been damaged by this conduct. Mary Kay is entitled to injunctive relief because Cook will otherwise continue to unlawfully infringe the Mary Kay IP. Cook's ongoing illegal conduct has caused, and will continue to cause, irreparable harm to Mary Kay's reputation, goodwill, business relationships, and IP.

33. Cook's use of Mary Kay's proprietary material is also a violation of her NDA, the Employee Handbook, and of her fiduciary duty to her former employer, as well as constitutes common law misappropriation.

**E. Cook Has Portrayed the Book as Endorsed by Mary Kay**

34. Given her presence at Mary Kay events and her prominent role in the Company prior to her departure, consumers are likely to be confused and wrongly believe that the Book is in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay. Cook also has caused Sales Force Members in specific to believe that Mary Kay endorses or supports the Book.

35. Moreover, the title expressly includes Mary Kay Ash's name, and its cover is a pink similar to the Company's well-recognized "Mary Kay Pink" and the Mary Kay Brand style guide. The Book includes 15 pages of photographs from corporate events. Cook also has clearly marketed the Book as being associated with Mary Kay, touting her work at Mary Kay and relationship with Mary Kay Ash. A media interview of Cook was mostly about Mary Kay, and included an iconic photograph of Mary Kay Ash with her dog and her pink Cadillac.

36. Mary Kay is harmed in several respects by consumers (and its Sales Force Members) wrongly believing that the Book is affiliated or associated with Mary Kay. Mary Kay also seeks to protect its IBCs from wrongfully feeling pressure to purchase the Book.

37. As a proximate result of Cook's actions, Mary Kay has suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales, damage to the value of its IP, harm to the goodwill associated with its family of brands, and damage to its existing and potential business relations.

38. Mary Kay is entitled to injunctive relief because Cook will otherwise continue to cause consumers to wrongly believe that the Book is affiliated with Mary Kay. Cook's ongoing illegal conduct has caused, and will continue to cause, irreparable harm to Mary Kay's reputation, goodwill, business relationships, and IP.

39. Cook's disregard of Mary Kay's cease-and-desist letter shows that Cook's conduct is knowing, intentional, willful, malicious, and wanton.

**F. Cook Is Encouraging Sales Force Members to Violate their Agreements with Mary Kay By Asking Them to Promote, Distribute, and Sell the Book**

40. Mary Kay enters into standard agreements with its Sales Force Members. Those agreements prohibit the Sales Force Members from promoting, distributing, or selling products that are not official Mary Kay products.

41. Based on her time at Mary Kay, Cook has personal information and/or the means to communicate with many Sales Force Members. Cook used her position of trust with the Company and years of contacts at Mary Kay to convince Sales Force Members that Mary Kay endorsed and/or supported the Book and thus persuaded Sales Force Members to promote, distribute, and sell the Book. Because of Cook's conduct, Sales Force Members unwittingly agreed to let her attend sales force events, causing a situation where the members were violating the terms and conditions of their agreements with Mary Kay. Cook, who is well aware of the terms of those contracts, has intentionally encouraged these violations and failed to clarify that the Book was not in fact supported or endorsed by Mary Kay.

42. Despite having knowledge of this prohibition, Cook willfully, intentionally and knowingly interfered with contracts of Sales Force Members by actively encouraging them to promote, distribute and sell the Book through these channels.

43. By encouraging the members to promote, distribute, and sell the Book, Cook caused and induced them to violate their agreements with Mary Kay.

44. Cook had no legal right, privilege, or justification for her conduct.

45. As a proximate result of Cook's actions, Mary Kay has suffered, and will continue to suffer, actual damages for which it is entitled to recover.

## FIRST CAUSE OF ACTION

### Copyright Infringement
### 17 U.S.C. § 501

46. Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

47. Mary Kay has registered copyrights with the U.S. Copyright Office for the Copyrighted Works described above.

48. Cook had access to the Copyrighted Works and directly references them in each chapter of the Book, including copying from the Copyrighted Works *verbatim* without commentary and without any transformative elements, as shown in Appendix A.

49. The registrations of the Copyrighted Works are valid, subsisting, and in full force and effect.

50. Cook has willfully and knowingly used the Copyrighted Works as set forth in the foregoing paragraphs.

51. Cook is not, and has never been, authorized to use the Copyrighted Works.

52. Cook's use of the Copyrighted Works in connection with her Book uses the "heart" of the underlying works and directly harms the market for the Mary Kay Books by replicating key passages.

53. As a proximate result of Cook's actions, Mary Kay has suffered, and will continue to suffer, great damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

54. Mary Kay is entitled to recover its damages caused by Cook's infringement of the Copyrighted Works and disgorge Cook's profits from her willfully infringing sales.

55. Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Cook's infringement. Unless Cook is permanently enjoined, Mary Kay will suffer irreparable harm.

**SECOND CAUSE OF ACTION**
**False Endorsement**
**15 U.S.C. § 1125(a)(1)(A)**

56. Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

57. Under the Lanham Act, false endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service. The law prohibits the use of a false or misleading representation that is likely to cause confusion as to either the plaintiff's connection with the defendant's goods or services or as to the sponsorship or approval by plaintiff of the defendant's goods, services, or commercial activities.

58. In connection with the sales of the Book, Cook uses words, terms, names, and photographs which are likely to deceive consumers into wrongly believing that the Book is in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay. In specific, Cook caused Sales Force Members to believe that Mary Kay supported and/or endorsed the Book.

59. The Book, written from the perspective of a trusted friend of Mary Kay Ash, also infringes on the likeness of Mary Kay's founder with the unauthorized use of her words and well-known persona in a manner that creates consumer confusion of an endorsement that does not exist.

60. Mary Kay is entitled to recover its damages caused by Cook's false endorsement.

61. Mary Kay is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Cook's false endorsement, and unless Cook is permanently enjoined, Mary Kay will suffer irreparable harm.

62. Mary Kay is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Cook has willfully, intentionally, maliciously, and in bad faith engaged in false endorsement.

### THIRD CAUSE OF ACTION
### Texas Common Law Breach of Contract

63. Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

64. This claim arises under the laws of the State of Texas. Under Texas law, a plaintiff has a claim for breach of contract if a valid contract exists, the plaintiff performed under the contract, the defendant breached the contract, and the plaintiff sustained damages as a result of the defendant's breach.

65. The NDA and Employee Handbook referenced above are valid, enforceable contracts.

66. Mary Kay performed or tendered performance of its contractual obligations under the NDA and the Employee Handbook.

67. As described above, Cook materially breached the NDA and Employee Handbook by using Mary Kay's proprietary information for her own benefit and the benefit of others.

68. Those breaches caused Mary Kay actual damages for which it is entitled to recover.

## FOURTH CAUSE OF ACTION
### Texas Common Law Misappropriation

69. Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70. This claim arises under the laws of the State of Texas. Under Texas law, common law appropriation occurs when the plaintiff's product was created through extensive time, labor, skill, and money; the defendant used that product in competition with the plaintiff, thereby gaining an advantage without the burden of the expense incurred by the plaintiff; and the plaintiff suffered damages as a result.

71. Mary Kay's proprietary information was created through the use of extensive labor, skill and money by Mary Kay employees and Mary Kay Ash herself.

72. Mary Kay owns the proprietary information, all of which remains valid and subsisting in full force and effect.

73. Cook knowingly, willfully and intentionally used Mary Kay's proprietary information in the Book, directly competing with Mary Kay's publications, all of which was obtained while she was a paid employee of Mary Kay at no additional cost.

74. Cook's misappropriation of Mary Kay's proprietary information has proximately caused Mary Kay damages for which it is entitled to recover.

## FIFTH CAUSE OF ACTION
### Texas Common Law Breach of Fiduciary Duty

75. Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

76. This claim arises under the laws of the State of Texas. Under Texas law, a defendant has breached a fiduciary duty when a fiduciary relationship exists between parties, the fiduciary engages in an action that is not fair and equitable or does not make reasonable use of the confidence

placed in it, and the act was a proximate cause of the plaintiff's damages and actual damage or loss occurred.

77. When one person is under a duty, created by law or contract, to act on or give advice for the benefit of another within the scope of the relationship (such as an employer-employee relationship), that person has a fiduciary relationship with the other person.

78. Employees, as part of their fiduciary duties, owe a duty of loyalty and utmost good faith to their employers and are obligated to act in their employers' interests, and are obligated under this duty not to divulge their employers' trade secrets and proprietary information both during their employment and after termination.

79. Cook and Mary Kay were subject to an employer-employee fiduciary relationship for more than forty years, with obligations of loyalty that continued after Cook's departure from Mary Kay.

80. Cook has known of her fiduciary duties as a former Mary Kay employee herself by signing the NDA and terms of the Employee Handbook.

81. Despite having knowledge of this duty, Cook willfully, intentionally and knowingly included elements of and references to Mary Kay's proprietary information that Cook had a fiduciary duty to keep confidential both as an employee and after her departure from Mary Kay in the Book; not making reasonable use of the confidence placed in her by Mary Kay.

82. As a proximate result of Cook's actions, Mary Kay has suffered, and will continue to suffer, actual damages for which it is entitled to recover.

**SIXTH CAUSE OF ACTION**
**Texas Common Law Tortious Interference**

83. Mary Kay re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

84. This claim arises under the laws of the State of Texas. Under Texas law, a defendant has tortiously interfered if a contract exists subject to interference, the defendant intentionally or willfully interfered with the contract, the act was a proximate cause of the plaintiff's damages and actual damage or loss occurred.

85. Mary Kay enters into standard agreements with Sales Force members. Those agreements prohibit the members from promoting, distributing, or selling products that are not official Mary Kay products.

86. Cook has known of this prohibition on promoting, distributing and selling non-Mary Kay products as a former Mary Kay employee herself and because Mary Kay informed her of this prohibition in the cease and desist letter it sent on September 29, 2021.

87. Despite having knowledge of this prohibition, Cook willfully, intentionally and knowingly interfered with the contracts of members of Mary Kay's independent sales force. Cook convinced Sales Force Members that Mary Kay endorsed and/or supported the Book and thus persuaded Sales Force Members to promote, distribute, and sell the Book. Because of Cook's conduct, Sales Force Members unwittingly agreed to let her attend sales force events, causing a situation where the members were violating the terms and conditions of their agreements with Mary Kay.

88. By encouraging the Sales Force Members to promote, distribute, and sell the Book, Cook caused and induced the members to violate their agreements with Mary Kay.

89. Cook had no legal right, privilege, or justification for her conduct, and instigated a breach of the Sales Force Members' agreements with Mary Kay.

90. As a proximate result of Cook's actions, Mary Kay has suffered, and will continue to suffer, actual damages for which it is entitled to recover.

## CONDITIONS PRECEDENT

91.     All conditions precedent to Mary Kay's claims for relief, if any, have occurred or have been performed.

## REQUEST FOR ATTORNEYS' FEES

92.     Mary Kay is entitled to recover its attorneys' fees and costs for this action, pursuant to the federal and state law identified herein, and Mary Kay hereby seeks such recovery from Cook of all its reasonable and necessary attorneys' fees and costs for prosecuting this action and obtaining the relief requested herein.

## JURY DEMAND

93.     Mary Kay demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Mary Kay prays for relief and judgment as follows:

A.     Judgment in favor of Mary Kay and against Cook in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, disgorgement of profits, punitive damages, exemplary damages, and pre-judgment and post-judgment interest as permitted by law;

B.     That a permanent injunction be issued enjoining Cook as follows:

  i. Prohibiting Cook from advertising or selling, via the Internet or otherwise, the Book;

  ii. Requiring Cook to take all action to remove any reference to any of Mary Kay's products, or any of Mary Kay's IP (including the Copyrighted Works) from the Book; and

  iii. Requiring Cook to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any of Mary Kay's IP which associate Mary Kay's products or Mary Kay's IP with Cook;

      iv.    Prohibiting Cook from inducing Sales Force Members to violate their agreements with Mary Kay by promoting the Book.

C.    An award of attorneys' fees, costs, and expenses; and

D.    Such other and further relief as the Court deems just, equitable and proper.

DATE: October 15, 2021

Respectfully submitted,

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com

**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 – Telephone
(214) 981-3829 – Facsimile

**ATTORNEYS FOR MARY KAY INC.**