IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:21-cv-02543-C |
| | § | |
| JENNIFER BICKEL COOK, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND BRIEF

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   LEGAL STANDARD FOR RULE 12(b)(6) MOTION ................................... 2

III.  ARGUMENT & AUTHORITIES ................................................................... 3

   A.  Copyright Infringement Claim (First Cause of Action. ...................................... 3

       1.  Mary Kay's allegations............................................................................... 3

       2.  Mary Kay's copyright claim fails under the Fair Use Doctrine. ................................ 3

           a)  Factor one. ......................................................................................... 5

           b)  Factor two. ......................................................................................... 6

           c)  Factor three. ....................................................................................... 6

           d)  Factor four. ......................................................................................... 7

   B.  False Endorsement Claim (Second Cause of Action)............................................ 8

       1.  Mary Kay's allegations............................................................................... 8

       2.  Mary Kay fails to plead a false endorsement claim that is plausible.......................... 8

   C.  Breach of Contract Claim (Third Cause of Action)............................................. 10

       1.  Mary Kay's allegations............................................................................. 10

       2.  Mary Kay fails to plead a breach of contract claim that is plausible......................... 10

   D.  Common Law Misappropriation Claim (Fourth Cause of Action)................................... 13

       1.  Mary Kay's allegations............................................................................. 13

       2.  Mary Kay fails to plead a misappropriation claim that is plausible. ......................... 13

   E.  Breach of Fiduriary Duty Claim (Fifth Cause of Action)................................................ 15

       1.  Mary Kay's allegations............................................................................. 15

       2.  Mary Kay fails to plead a breach of fiduciary duty claim that is plausible. .............. 15

   F.  Tortious Interference with Contract Claim (Sixth Cause of Action)................................ 16

1.  Mary Kay's allegations.............................................................................. 16

2.  Mary Kay fails to plead a tortious interference claim that is plausible. ................... 16

IV.  PRAYER .................................................................................................................... 17

## TABLE OF AUTHORITIES

**CASES**

*Aiello v. United Air Lines, Inc.,* 818 F.2d 1196 (5th Cir.1987) ............................................... 11-12

*Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772 (5th Cir. 1999) ..................................... 13-14

*Armendariz v. Mora,* 553 S.W.2d 400 (Tex. App. – El Paso, 1977) ...................................... 16-17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ...................................................................................... 2

*Basic Cap. Mgmt. v. Dynex Cap., Inc.,* 976 F.3d 585 (5th Cir. 2020)........................................... 3

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007) ........................................................................... 2

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.,* 27 F.4th 313 (5th Cir. 2022)................3-5, 7-8

*Browning–Ferris, Inc. v. Reyna,* 865 S.W.2d 925 (Tex.1993) ..................................................... 16

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994) ......................................................... 4-7

*Crum v. American Airlines, Inc.,* 946 F.2d 423 (5th Cir.1991) ................................................... 11

*Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.,* 965 F.3d 365 (5th Cir. 2020)....... 13

*Dryer v. Nat'l Football League,* 814 F.3d 938 (8th Cir. 2016)....................................................... 9

*EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA,* 467 F.3d 466 (5th Cir. 2006) ...................................................................................................... 3

*Fischer v. CTMI, LLC,* 479 S.W.3d 231 (Tex. 2016) ................................................................. 11

*Fisher v. Dees,* 794 F.2d 432 (9th Cir. 1986)…………………………………………………...4

*Glagola v. North Tex. Mun. Water Dist.,* 705 F.Supp. 1220 (E.D.Tex.1989) ............................ 12

*Google LLC v. Oracle Am., Inc.,* —— U.S. ——, 141 S. Ct. 1183 (2021) .................................... 5

*Hamilton v. Segue Software Inc.,* 232 F.3d 473 (5th Cir. 2000)................................................... 11

*Harper & Row Publrs. v. Nation Enters.,* 471 U.S. 539 (1985).................................................5-7

*Hicks v. Baylor Univ. Med. Center,* 789 S.W.2d 299 (Tex.App.—Dallas 1990, writ denied).11-12

iii

*Hill v. Heritage Res., Inc*., 964 S.W.2d 89 (Tex. App.—El Paso 1997, pet. denied)).................. 17

*In re Katrina Canal Breaches Litigation*, 495 F.3d 191 (5th Cir. 2007)......................................... 2

*Joachim v. AT & T Information Sys.,* 793 F.2d 113 (5th Cir.1986)................................................ 11

*Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193 (Tex. 2002) ............................................. 15

*Kane Enters. v. MacGregor (USA), Inc.,* 322 F.3d 371 (5th Cir. 2003)......................................... 2

*Klayman v. Judicial Watch, Inc.,* 6 F.4th 1301 (D.C. Cir. 2021), *cert. denied*, No. 21-1264, 2022 WL 1528530 (U.S. May 16, 2022) ....................................................................................... 8-9

*Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ........................... 9

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765 (5th Cir. 2017) ...................... 13-14

*Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74 (Tex. 2000).. 16

*Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536 (Tex.App.—Corpus Christi 1982, no writ)..... 11

*Searcy v. DDA, Inc.*, 201 S.W.3d 319 (Tex. App. – Dallas 2006, no pet.)............................. 10-12

*Stewart v. Abend*, 495 U.S. 207 (1990)................................................................................... 4, 6

*State National Bank of El Paso v. Farah Mfg*., 678 S.W.2d 661 (Tex. App. – El Paso, 1984) ....17

*T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218 (Tex. 1992) .................................... 11

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652 (5th Cir. 2017)............................... 13-14

*Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) ........................................................................................................................... 11

*Williams v. First Tennessee Nat. Corp.*, 97 S.W.3d 798 (Tex. App. – Dallas 2003, no pet.) ...... 10

*Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469 (5th Cir. 1991), *cert denied*, 502 U.S. 984 (1991)................................................................................................................................. 12

## STATUTES

15 U.S.C. § 1125...........................................................................................................................8-9

17 U.S.C. § 107..............................................................................................................................5-7

**RULES**

Fed. R. Civ. P. 12 ....................................................................................................................... 2-4

## I.  INTRODUCTION

Plaintiff Mary Kay, Inc. ("Mary Kay" or "Plaintiff") filed its first amended complaint ("Complaint") against Defendant Jennifer Bickel Cook ("Cook" or "Defendant") on May 23, 2022 (Dkt. 18), in which it asserts a plethora of causes of action against Cook for alleged unlawful acts arising out of Cook's publishing of a book containing her long-time experience working with Mary Kay's now deceased founder, Mary Kay Ash. Cook's book, entitled "Pass It On: What I Learned from Mary Kay Ash" (the "Book"), is a first-person account of her own observations and experiences as Mary Kay Ash's assistant, confidant, and close friend for over 40 years, in which Cook praises Mary Kay Ash throughout.

But because Cook didn't get the permission of Mary Kay the company before writing the Book, and instead of realizing the positive benefits that the company could reap from Cook's positive recount of Mary Kay Ash, Mary Kay has sued her for, among other things, copyright infringement, violations of the Lanham Act and breach of fiduciary duty. The crux of Mary Kay's copyright claims is that Cook quoted to certain sections of books written by Mary Kay Ash (not Mary Kay the company) in the Book. Cook does not refute this and, in fact, accurately footnoted every single citation to any published quotations from any works authored by Ms. Ash in the Book. Cook's quotes from these previously copyrighted works amount to a miniscule amount of the overall text of the Book, and she had every right to use them in this way under the Fair Use Doctrine.

Even more confounding are Mary Kay's other causes of action against Cook, in which it claims that Cook unlawfully used trade secrets and proprietary information belonging to Mary Kay in the Book. This is of course untrue, as conclusively established by the fact that Mary Kay

does not actually identify what trade secrets or proprietary information Cook supposedly took and misappropriated, as it is required to do in its Complaint.

Mary Kay's lawsuit is a gross violation of Cook's First Amendment right to tell a first-person account of her life-long relationship with a close friend and mentor. Because all of Mary Kay's claims against Cook fail on their face as a matter of law, the Court should dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.  LEGAL STANDARD FOR RULE 12(b)(6) MOTION

In deciding Cook's motion to dismiss, the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the non-movant. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007). However, Mary Kay must plead specific facts in its Complaint, not mere conclusional allegations, to avoid dismissal for failure to state a claim. *Kane Enters. v. MacGregor (USA), Inc.,* 322 F.3d 371, 374 (5th Cir. 2003). The courts do not accept as true conclusory allegations or unwarranted deductions of fact. *Id.*

In order to survive a Rule 12(b)(6) motion to dismiss, Mary Kay must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Mary Kay's allegations must be enough to raise a right to relief above the speculative level. *Id*. at 555. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, Mary Kay's obligation to provide the grounds of its entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id*. In other words, Mary Kay must allege sufficient factual content to nudge its claim "across the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 683 (2009) (*quoting Twombly*, 550 U.S. at 570).

Finally, the failure-to-state-a-claim inquiry typically focuses on whether the plaintiff plausibly alleges the elements of a claim; however, Rule 12(b)(6) dismissal may also "'be appropriate based on a successful affirmative defense' provided that the affirmative defense 'appear[s] on the face of the complaint.' " *Basic Cap. Mgmt. v. Dynex Cap., Inc.*, 976 F.3d 585, 588 (5th Cir. 2020) (*quoting EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 470 (5th Cir. 2006)).

### III.   ARGUMENT & AUTHORITIES

**A)      Copyright Infringement Claim (First Cause of Action).**

1.      <u>Mary Kay's allegations</u>.

Mary Kay alleges in its Complaint that it possesses the copyright rights in four copyrighted works, all of which were written by Mary Kay's founder, Mary Kay Ash (collectively the "Copyrighted Works"), which it claims are valid and subsisting and in full force and effect.[1] According to Mary Kay, Cook quoted certain passages from the Copyrighted Works in the Book, all of which were cited in the End Notes to the Book.[2] Mary Kay alleges that Cook never asked its permission to use these quoted passages from the Copyrighted Works in the Book, and that Cook's act of doing so constitutes copyright infringement.[3]

2)      <u>Mary Kay's copyright claim fails under the Fair Use Doctrine</u>.

In the copyright realm, fair use is an affirmative defense that can support Rule 12(b)(6) dismissal. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). While the fair use defense is usually teed up at summary judgment, the Court can resolve it on the pleadings if the complaint contains facts sufficient to evaluate each of the statutory factors. *Id.* (quotation omitted).

---

[1] Complaint, at ¶¶ 16, 47-48.
[2] Id. at ¶¶ 28-29, and App. A.
[3] Id. at ¶¶ 31-32, 51-57, and App. A.

In fact, in the *Bell* case, just decided earlier this year, the Fifth Circuit affirmed the district court's dismissal of a plaintiff's copyright infringement complaint via a 12(b)(6) motion based on the affirmative defense of fair use. In *Bell,* the plaintiff-author sued the defendant-school district for re-printing on the defendant's twitter account the entirety of a one-page motivational passage from a 72-page copyrighted book the plaintiff had written. *Bell*, 27 F.4th at 319. The defendant did not seek permission before publishing the tweet with the quoted passage, but it did credit the plaintiff as the author. *Id*. The plaintiff sued for copyright infringement, and both the district court and the Fifth Circuit found that the defendant's use of the passage constituted fair use and dismissed the plaintiff's complaint. *Id*. at 325. A like result is warranted here because facts sufficient to evaluate each of the statutory factors of the fair use defense are readily available from the Complaint.

The fair-use doctrine balances the "inherent tension" between copyright's interests in protecting author's works and permitting others to reference them in cultural conversation. *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 575 (1994). Because the overarching goal of copyright is to stimulate intellectual activity for the public good, courts have long recognized a "limited privilege in those other than the owner of a copyright to use the copyrighted material in a reasonable manner without the owner's consent." *Fisher v. Dees*, 794 F.2d 432, 435 (9th Cir. 1986)(quotation omitted). This privilege applies when "rigid application of the copyright statute" would "stifle the very creativity" it is meant to foster. *Stewart v. Abend*, 495 U.S. 207, 236 (1990)(quotation omitted).

The four statutory factors to be considered in determining whether to apply the fair use doctrine are: 1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted

work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The four factors are not exclusive. *Harper & Row Publrs. v. Nation Enters.,* 471 U.S. 539, 560 (1985). All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. A fair-use defense can succeed even if one or more factors favor the claimant. *See id*.

a)      Factor one.

The first factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). The first consideration is commerciality—"whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *See Harper & Row*, 471 U.S. at 562 (quotation omitted). The second consideration is whether the user acted in good faith. *Google LLC v. Oracle Am., Inc.*, —— U.S. ——, 141 S. Ct. 1183, 1204 (2021). And the third consideration is whether the use is "transformative," meaning it "adds something new" to the copyrighted work. *Id.* at 1203.

First, Cook admits that the Book is to be sold to the public, meaning that it is of a commercial nature.

However, Mary Kay does not and cannot allege the Cook did not act in good faith. To the contrary, Mary Kay admits in its Complaint that for every single quoted passage from the Copyrighted Works, Cook identified Mary Kay Ash as the author and cited to the source. She did not plagiarize the Copyrighted Works and fail to identify the source; Cook did precisely the opposite. Like the Fifth Circuit found in *Bell*, this shows good faith on the part of Cook. *Bell*, 27 F.4th at 322-23.

Furthermore, a plain reading of Mary Kay's Complaint establishes that Cook's Book, titled "Pass It On: What I Learned from Mary Kay Ash," is indeed transformative. The entire genesis of the Book is based on Cook's own interactions with Mary Kay Ash, and merely cites to bits and pieces of passages from four separate Copyrighted Works. The Book is not merely a re-hashing of the Copyrighted Works, nor does Mary Kay allege such. Accordingly, factor one weighs in favor of a finding of fair use.

        b)      Factor two.

In looking to the nature of the copyrighted work, fair use is more likely to be found in factual works than in fictional works. *Abend*, 495 U.S. at 237. To determine the nature of the work, the Court is to consider whether the work has been appropriated for its "expressive elements," rather than to disseminate "the underlying facts." *Harper & Row*, 471 U.S. at 563–64. The Court is also to consider whether the copyrighted work has been published, as the scope of fair use is "narrower with respect to unpublished works." *Id*.

Here, it is not disputed that the Book is a factual book of first-hand recollections of real life events, not a fictional work. Further, it is not disputed that the Copyrighted Works were published; indeed, all of them were published more than 25 years ago, meaning the scope of fair use is broader. Therefore, factor two weighs in favor of a finding of fair use.

        c)      Factor three.

The third fair-use factor examines the amount and substantiality of the portion used in relation to the copyrighted work as a whole. 17 U.S.C. § 107(3). The Court is to consider whether the amount copied is either a quantitatively or qualitatively significant part of the original. *See Campbell*, 510 U.S. at 586–87.

Cook's Book consists of 14 chapters and nearly 200 pages of her own personal memories of her interactions with Mary Kay Ash. Mary Kay's Complaint identifies a total of approximately 23 *sentences* of quoted content from four different Copyrighted Works in the entire 200 *pages* of Cook's Book. It cannot seriously be argued that the quoted portions of the Copyrighted Works in the Book constitute a quantitatively or qualitatively significant part of same. Factor three weighs in favor of a finding of fair use.

        d)       Factor four.

The fourth factor examines "the effect of the use" on the market for and value of the copyrighted work. 17 U.S.C. § 107(4). The Court is to consider actual market harm but, more broadly, whether widespread use of the work in the same infringing fashion "would result in a substantially adverse impact on the potential market" for the original work and any derivatives. *Campbell*, 510 U.S. at 590. "This last factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

Once more, because of the miniscule amount of quoted content from the Copyrighted Works included in the Book, they cannot and do not cause a substantially adverse impact on the potential market for the Copyrighted Works. *See Bell*, 27 F.4[th] at 325 ("The tweets do not reproduce such a substantial portion of Winning Isn't Normal "as to make available a significantly competing substitute" for the original work"). To be sure, as the court held in *Bell*, if anything, the properly attributed quotations of short passages from the Copyrighted Works in the Book might actually bolster interest in the Copyrighted Works. *See id.*  As such, factor four weighs in favor of a finding of fair use.

Tallying up the fair use factors, all four support a finding that the Book is protected under the Fair Use doctrine. This conclusion comports with the "ultimate test of fair use": whether

copyright law's goal of promoting creativity would be better served by allowing the use than preventing it. *Id*. at 325. In this case, that goal would be better served by allowing the Book than by allowing Mary Kay to silence it. Accordingly, the Court should dismiss Mary Kay's copyright infringement claim.

**B)      False Endorsement Claim (Second Cause of Action).**

1.      <u>Mary Kay's allegations</u>.

In its Complaint, Mary Kay alleges that Cook uses words, terms, names, and photographs which are likely to deceive consumers into wrongfully believing that the Book is in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay.[4] More specifically, Mary Kay alleges that the Book was written from the perspective of a trusted friend of Mary Kay Ash and infringes on the likeness of Ms. Ash with the unauthorized use of her words and well known persona in a manner that creates consumer confusion of an endorsement that does not exist.[5]

2)      <u>Mary Kay fails to plead a false endorsement claim that is plausible</u>.

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a). Among other things, the Lanham Act provides a cause of action to combat consumer confusion about a person's affiliation, such as a false endorsement or false advertising. 15 U.S.C. § 1125(a)(1); *Klayman v. Judicial Watch, Inc.,* 6 F.4th 1301, 1314 (D.C.

---

[4] Id. at ¶ 64.
[5] Id. at ¶ 65.

Cir. 2021), *cert. denied*, No. 21-1264, 2022 WL 1528530 (U.S. May 16, 2022). This provision "prohibits 'false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device.' " *Dryer v. Nat'l Football League*, 814 F.3d 938, 944 (8th Cir. 2016) (quotations omitted).

To establish a false endorsement claim, the plaintiff must allege that the defendant made statements that are either "literally false as a factual matter" or "literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers." *Id.* (quotations omitted). Finally, a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff. *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 133 (2014).

First and foremost, Mary Kay is asserting that the Book was written from the perspective of a trusted friend of Mary Kay Ash and infringes on the likeness of Ms. Ash with the unauthorized use of *her* words. In essence, Mary Kay is attempting to assert a false endorsement claim on behalf of the deceased Mary Kay Ash. This it cannot do.

Moreover, Mary Kay does not and has not alleged that Cook has made any statements in the Book or elsewhere about Mary Kay that are literally false or convey a false impression or are likely to deceive consumers. Nor does Mary Kay allege that it has suffered any economic or reputational injury from Cook's alleged unauthorized use of Mary Kay Ash's words or likeness in the Book. Nor does Mary Kay allege that any consumers have withheld any trade from Mary Kay whatsoever as a result of the Book.

Accordingly, Mary Kay does not properly plead a cause of action for false endorsement against Cook, and this cause of action should be dismissed.

**C)      Breach of Contract Claim (Third Cause of Action).**

1.      <u>Mary Kay's allegations</u>.

Mary Kay alleges that Cook was employed by Mary Kay from 1974 through July 1, 2017, including as personal assistant to Ms. Ash and, finally, as director of the Mary Kay Museum.[6] According to Mary Kay, during her employment, Cook agreed to the terms of a Non-Disclosure Agreement ("NDA") and Employment Handbook.[7]

Mary Kay alleges that during her employment, Cook was provided certain unidentified proprietary information of Mary Kay's, that under the NDA and Employee Handbook Cook agreed not to disclose or use any such proprietary information for her own benefit, and that Cook breached the NDA and Employee Handbook by using Mary Kay's proprietary information  for her own benefit and the benefit of others.[8]

2)      <u>Mary Kay fails to plead a breach of contract claim that is plausible</u>.

In order to establish a breach of contract by Cook, Mary Kay must plead and prove the following: (1) a valid contract; (2) performance or tendered performance by Mary Kay; (3) breach of the contract by Cook; and (4) damages sustained by Mary Kay as a result of that breach. *Williams v. First Tennessee Nat. Corp.*, 97 S.W.3d 798, 802 (Tex. App. – Dallas 2003, no pet.).

To prove the first element, a valid, enforceable contract, Mary Kay must plead and prove: (1) an offer; (2) an acceptance; (3) mutual assent; (4) execution and delivery of the contract with the intent that it be mutual and binding; and (5) consideration. *Searcy v. DDA, Inc.*, 201 S.W.3d

---

[6] Id. at ¶ 18.
[7] Id. at ¶ 19.
[8] Id. at ¶¶ 19-20, 73.

319, 322 (Tex. App. – Dallas 2006, no pet.). The essential terms of the contract must be agreed before it can be enforced. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). A contract's essential and material terms must be definite enough to confirm that both parties intended to be contractually bound to them. *Fischer v. CTMI, LLC*, 479 S.W.3d 231, 237 (Tex. 2016).

Mary Kay does not plead specific facts to establish that it had any valid contract with Cook. One of the "contracts" alleged to exist between Mary Kay and Cooks is the Mary Kay Employee Handbook, which simply is not a contract.

To the contrary, the long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary. *Hamilton v. Segue Software Inc*., 232 F.3d 473, 478 (5th Cir. 2000) (quotation omitted). Texas law generally rejects the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine. *Aiello v. United Air Lines, Inc.,* 818 F.2d 1196, 1198 (5th Cir.1987) (quotations omitted); *see also, Joachim v. AT & T Information Sys.,* 793 F.2d 113 (5th Cir.1986); *see also, Crum v. American Airlines, Inc.*, 946 F.2d 423, 426 (5th Cir.1991). To be sure, employee handbooks and manuals do not create contracts when the parties have not expressly agreed that the procedures contained in these materials are binding. *See, e.g., Hicks v. Baylor Univ. Med. Center,* 789 S.W.2d 299, 302 (Tex.App.—Dallas 1990, writ denied); *Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 759 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex.App.—Corpus Christi 1982, no writ).

The Fifth Circuit has recognized an exception to the Texas general rule that personnel manuals and employee handbooks do not create contractual rights: when "an employer's manual or handbook contains detailed procedures for discipline and discharge *and* expressly recognizes an obligation to discharge only for good cause, a contract modifying the at-will rule may be found." *Hicks,* 789 S.W.2d at 302–03 (discussing the *Aiello* case). In *Aiello,* the employee handbook contained the statement that it was not a contract and that all employment was "at will," yet the court focused on three factors it deemed significant in finding that the handbook was an employment agreement that modified the employee's at-will status: (1) the employee manual contained not only detailed procedures for discipline and discharge but also an obligation to discharge only for good cause; (2) the employer followed these procedures and notified the employee that she was entitled to them; and (3) the supervisor who discharged the employee treated the provisions of the employee manual as a contractual obligation. *Aiello,* 818 F.2d at 1198; *see also Glagola v. North Tex. Mun. Water Dist.,* 705 F.Supp. 1220, 1223 (E.D.Tex.1989).

But *Aiello* is the exception, not the rule. And, Mary Kay has not and cannot plead that its Employee Handbook contained any of the provisions above that were present in *Aiello* to take it out of the general rule and make it a binding contract. *See Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471–72 (5th Cir. 1991), *cert denied*, 502 U.S. 984 (1991). In fact, Mary Kay does not even try. Rather, Mary Kay merely alleges that Cook is supposedly bound to this purported contract, but without any reciprocal obligations on its part – a touchstone requirement of any binding contract. Absent mutual assent and consideration, which are entirely lacking, the Employee Handbook does not and cannot constitute a contract. *See Searcy,* 201 S.W.3d at 322.

As for the NDA, it can constitute a valid contract. However, Mary Kay does not adequately plead facts to establish how it was allegedly breached by Cook. To the contrary,

Mary Kay alleges in conclusory fashion that it provided Cook access to supposed "proprietary information" in exchange for Cook's promise not to use or disclose same, but Mary Kay offers no factual allegations whatsoever as to what "proprietary information" it supposedly provided Cook. Nor does Mary Kay offer any factual allegations as to what "proprietary information" Cook allegedly used or disclosed to a third party in connection with her publication of the Book. Mary Kay's claims require more than such bare labels and conclusions under *Twombly*.

Accordingly, Mary Kay does not properly plead a cause of action for breach of contract against Cook, and this cause of action should be dismissed.

**D)**      **Common Law Misappropriation Claim (Fourth Cause of Action).**

1.      <u>Mary Kay's allegations</u>.

Mary Kay asserts a claim against Cook for common law misappropriation, claiming that Cook allegedly took and used Mary Kay's proprietary information, which was created through the use of labor, skill, and money by Mary Kay employees, and used such information in the Book.[9]

2)      <u>Mary Kay fails to plead a common law misappropriation claim that is plausible</u>.

Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law. *Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc*., 965 F.3d 365, 377 (5th Cir. 2020). Under well settled precedent in the Fifth Circuit, a claim for unfair competition by misappropriation is preempted by the Copyright Act. *See Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765 (5th Cir. 2017); *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652 (5th Cir. 2017); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772 (5th Cir. 1999). In *Alcatel*, the Fifth Circuit held that an unfair competition by misappropriation claim was preempted because it is based on interests protected by the Copyright Act: defendant's

---

[9] Id. at ¶¶ 76-79.

reproduction, distribution, and preparation of derivative works of plaintiff's copyrighted software. *Alcatel*, 166 F.3d at 789. In *Ultraflow*, where the plaintiff alleged a competitor "stole its drawings showing how to design valves and used them to make duplicate valves," the appellate court again found the claim preempted because "it provides a right akin to those '*within the general scope of copyright* as specified by section 106.'" *Ultraflo*, 845 F.3d at 658. And in *Motion Medical*, despite a request to reconsider its prior holdings, the court again held the claim preempted. *See Motion Medical*, 875 F.3d at 775 ("We have twice held that Texas's unfair-competition-by-misappropriation tort does not afford protection qualitatively different from federal copyright law … We do so again here.").

The claims alleged against Cook, at their core, surround the alleged use and reproduction of the Copyrighted Works. The same acts that constitute the bases for Mary Kay's common law misappropriation claim are those that Mary Kay asserts under the Copyright Act.

In addition or in the alternative, if Mary Kay's misappropriation is claim is indeed separate and distinct from its copyright infringement claim, it is incumbent upon Mary Kay to explain how and why by identifying the "proprietary information" Cook allegedly misappropriated. Similar to Mary Kay's defective breach of contract claim, Mary Kay again offers zero factual support as to what "proprietary information" Mary Kay supposedly created through its own extensive time, labor, skill, and money; furthermore, Mary Kay fails to identify what "proprietary information" Cook has used in competition with Mary Kay.

Accordingly, because Mary Kay's common law misappropriation claim is preempted by the Copyright Act and because Mary Kay has failed to properly plead a cause of action for same, the claim should be dismissed.

**E)**      **Breach of Fiduciary Duty Claim (Fifth Cause of Action).**

1.      <u>Mary Kay's allegations.</u>

Mary Kay alleges that, as an employee of Mary Kay, Cook owed fiduciary duties to Mary Kay during employment of loyalty, utmost good faith, and to protect Mary Kay's proprietary information.[10] Mary Kay alleges that Cook breached her fiduciary duties to Mary Kay by allegedly using Mary Kay's proprietary information in the Book that Cook published.[11]

2)      <u>Mary Kay fails to plead a breach of fiduciary duty claim that is plausible.</u>

It is true that employees owe a fiduciary duty to their employers and are obligated to act in their employer's interests during employment. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 201 (Tex. 2002). After employment, an employee continues to have a fiduciary duty not to divulge his or her employer's trade secrets. *Id.* at 201-202.

However, here, Mary Kay has not alleged that it even owns any trade secrets, much less that Cook took any trade secrets. Rather, Mary Kay alleges that after her employment with Mary Kay terminated, Cook allegedly took and used some unidentified "proprietary information" in the Book, and that this constituted a breach of fiduciary duty.

Mary Kay can cite to no case law to support an argument that an employee breached fiduciary duties to her employer by purportedly taking "proprietary information" and using it more than four years after termination of employment. Moreover, for the same reasons stated above with respect to the breach of contract claim, Mary Kay is required to plead facts identifying what "proprietary information" it provided to Cook and what "proprietary information" Cook allegedly improperly used. It has not.

---

[10] Id. at ¶¶ 6, 84-86.
[11] Id. at ¶¶ 87.

Accordingly, Mary Kay does not properly plead a cause of action for breach of fiduciary duty against Cook, and this cause of action should be dismissed.

**F.      Tortious Interference with Contract Claim (Sixth Cause of Action).**

1.      <u>Mary Kay's allegations.</u>

Mary Kay alleges that it has standard agreements with its Sales Force members which prohibit the members from promoting, distributing, or selling products that are not official Mary Kay products.[12] Mary Kay alleges that Cook knew of these agreements and that she interfered with the agreements by convincing Sales Force members that Mary Kay endorsed the Book and thus persuaded them to promote, distribute, and sell the Book.[13] As such, according to Mary Kay, by encouraging Sales Force members to promote, distribute, and sell the Book, Cook induced the members to violate their agreements with Mary Kay.[14]

2)      <u>Mary Kay fails to plead a tortious interference claim that is plausible.</u>

Mary Kay must establish the following elements of its tortious interference with existing contract claim against Cook: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract by Cook; (3) that proximately caused Dallas Oil to suffer actual damages or loss.  *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

The second requirement concerning "willful and intentional" requires some direct evidence of a willful act of interference by the defendant. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex.1993). The interfering party must know of the existence of a contract between the plaintiff and a third party or have knowledge of facts that would lead a reasonable person to conclude that a contract existed. *Armendariz v. Mora*, 553 S.W.2d 400, 406 (Tex. App.

---

[12] Id. at ¶ 91.
[13] Id. at ¶¶ 92-93.
[14] Id. at ¶ 94.

– El Paso, 1977). The interference must proximately cause damage or harm. *State National Bank of El Paso v. Farah Mfg*., 678 S.W.2d 661, 689 (Tex. App. – El Paso, 1984). The measure of damages for tortious interference is the same for breach of contract; the plaintiff is to be put in the same economic position as if the contract had not been breached. *Armendariz*, 553 S.W.2d at 406; *Hill v. Heritage Res., Inc*., 964 S.W.2d 89, 123 (Tex. App.—El Paso 1997, pet. denied).

Mary Kay fails to adequately plead facts to support elements two and three of this cause of action. Specifically, Mary Kay fails to plead specific facts to establish that Cook willfully interfered with any agreements between it and its Sales Force members. Mary Kay also fails to plead specific facts as to what harm it proximately suffered as a result of Cook's alleged interference.

Indeed, Mary Kay does not plead that a single Sales Force member distributed or sold even one copy of Cook's book; rather, it only pleads that Cook purportedly "induced" them to do so. Thus, Mary Kay has not pled facts to establish that any agreement with any Sales Force member has been breached. And, as stated above, the measure of damages for a tortious interference claim is to put the plaintiff in the same position as if the agreement had not been breached. Here, Mary Kay has not pled that a single agreement with its Sales Force members has been breached, nor that it has suffered any harm. It is therefore in no worse position and has suffered no damages.

Accordingly, Mary Kay does not properly plead a cause of action for tortious interference with contract against Cook, and this cause of action should be dismissed.

## IV.  PRAYER

Cook respectfully requests that the Court grants her motion, dismisses Mary Kay's claims against her with prejudice, and for such other relief that she may show herself justly entitled.

Respectfully submitted,

By: */s/ Eric C. Wood*
Eric C. Wood
State Bar No. 24037737
eric@brownfoxlaw.com
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, Texas 75034
Phone: (214) 327-5000
Fax: (214) 327-5001

ATTORNEYS FOR DEFENDANT
JENNIFER BICKEL COOK

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system on June 6, 2022.


*/s/ Eric C. Wood*
Eric C. Wood