**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MARY KAY INC., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | C.A. No. 3:21-cv-02543-C |
| JENNIFER BICKEL COOK, | § | |
| | § | DEMAND FOR JURY TRIAL |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE AND BRIEF IN OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

Christopher J. Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com

**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 – Telephone
(214) 981-3829 – Facsimile

**ATTORNEYS FOR MARY KAY INC.**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

I.     INTRODUCTION ............................................................................................................ 1

II.    STATEMENT OF FACTS ............................................................................................. 1

     A.    Mary Kay and Its Intellectual Property................................................................. 1

     B.    Cook's Agreements with Mary Kay. ..................................................................... 2

     C.    In September 2021, Mary Kay Learned About the Book And Tried, Unsuccessfully, to Obtain a Copy to Review. .......................................................... 3

     D.    The Book Copies Wholesale Portions of the Copyrighted Works and Misappropriates Mary Kay's Proprietary Information In Breach of Cook's Contracts And Continuing Fiduciary Duties. ............................................. 4

III.    ARGUMENTS AND AUTHORITIES.............................................................................. 6

     A.    Legal Standard. ...................................................................................................... 6

     B.    The Fair Use Defense Does Not Bar Mary Kay's Copyright Infringement Claims. ................................................................................................ 6

     C.    The Court Should Deny Cook's Motion to Dismiss Mary Kay's Lanham Act Claim. ................................................................................................ 10

     D.    The Motion Should Be Denied As To The Breach Of Contract Claim Because Both Mary Kay's Employee Handbook And Cook's NDA Are Contracts. ...................................................................................................... 13

     E.    Mary Kay's Claim For Common Law Misappropriation Is Not Preempted By The Copyright Act Because It Involves Proprietary Information Not Protected by Copyright. ............................................................ 15

     F.    Mary Kay's Breach of Fiduciary Claim Should Proceed Because Cook's Fiduciary Duty Protecting Mary Kay's Proprietary Information Continues Post-Employment. ............................................................ 17

     G.    The Court Should Deny Cook's Motion to Dismiss Mary Kay's Claim for Tortious Interference. ..................................................................................... 18

IV.    CONCLUSION................................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
    166 F.3d 772 (5th Cir. 1999) ........................................................................ 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................... 6

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
    27 F.4th 313 (5th Cir. 2022) ................................................... 8, 9, 10, 11

*Better Bus. Bureau of Metro. Houston, Inc. v. Med. Directors, Inc.*,
    681 F.2d 397 (5th Cir. 1982) ........................................................................ 13

*BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*,
    448 S.W.3d 562 (Tex. App. 2014).................................................................. 19

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)................................................................................. 7, 11

*Clark v. Amoco Prod. Co.*,
    794 F.2d 967 (5th Cir. 1986) ........................................................................ 7

*Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*,
    214 F.3d 432 (3d Cir. 2000).......................................................................... 13

*Crum v. Am. Airlines, Inc.*,
    946 F.2d 423 (5th Cir. 1991) ........................................................................ 17

*Digital Drilling Data Sys., L.L.C. v. Petrolink Svcs., Inc.*,
    965 F.3d 365 (5th Cir. 2020) ........................................................................ 20

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F.3d 915 (6th Cir. 2003) ........................................................................ 14

*Facenda v. N.F.L. Films, Inc.*,
    542 F.3d 1007 (3d Cir. 2008)................................................................. 12, 13

*Geophysical Servs., Inc. v. TGS-NOPEC Geophysical Servs.*,
    Civ. A. No. 14-1368, 2017 WL 559859 (S.D. Tex. Nov. 21, 2017)................ 11

*Glagola v. North Tex. Mun. Water Dist.*,
    705 F.Supp. 1220 (E.D. Tex. 1989)............................................................... 18

*Harper & Row Publishers, Inc. v. Nation Enterprises*,
    471 U.S. 539 (1985)................................................................................. 7, 10

*Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Texas, Inc*.,
No. 02-12-00512-CV, 2014 WL 5307191 (Tex. App. Oct. 16, 2014) ............................ 21

*Hicks v. Baylor Univ. Med. Center*,
789 S.W.2d 299 (Tex. App. - Dallas 1990) ........................................................ 17

*Joachim v. AT&T Info. Sys*.,
793 F.2d 113 (5th Cir. 1986) ...................................................................... 17

*L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,*
9 F.3d 561 (7th Cir. 1993) ........................................................................ 12

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ....................................................................... 6

*Miller Paper Co. v. Roberts Paper Co.*,
901 S.W.2d 593 (Tex. App. 1995) .................................................................. 21

*Motion Med. Techs., L.L.C. v. Thermotek, Inc.*,
875 F.3d 765 (5th Cir. 2017) ...................................................................... 20

*Nichols v. Club for Growth Action*,
235 F. Supp. 3d 289 (D.D.C. 2017) ................................................................. 7

*Orthopro, Inc. v. Arthrex, Inc.*,
No. 308-CV-1315-L, 2009 WL 1374773 (N.D. Tex. May 18, 2009) ............................. 16

*Parks v. LaFace Records*,
329 F.3d 437 (6th Cir. 2003) ...................................................................... 12

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
227 F.3d 489 (5th Cir. 2000) ...................................................................... 13

*Prudential Ins. Co. v. Financial Review Services, Inc.*,
29 S.W.3d 74 (Tex. 2000) .......................................................................... 22

*RedMeatMedia v. Strategic Am., Inc.*,
No. SA-13-CA-347-FB, 2013 WL 12131904 (W.D. Tex. Nov. 21, 2013) ..................... 16

*RenewData Corp. v. Strickler*,
No. 03-05-00273-CV, 2006 WL 504998 (Tex. App. Mar. 3, 2006) .............................. 21

*Reynolds Mfg. Co. v. Mendoza*,
644 S.W.2d 536 (Tex. App. - Corpus Christi 1982) ............................................... 17

*Searcy v. DDA, Inc.*,
201 S.W.3d 319 (Tex. App. - Dallas 2006) ........................................................ 18

*Seven–Up Co. v. Coca–Cola Co.*,
    86 F.3d 1379 (5th Cir. 1996) ..................................................................... 13

*Sonnier v. State Farm Mutual Auto. Ins. Co.*,
    509 F.3d 673 (5th Cir. 2007) ....................................................................... 6

*Stayart v. Yahoo! Inc.*,
    651 F. Supp. 2d 873 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) ................... 14

*Techsys Chassis, Inc. v. Sullair Corp.*,
    No. 4:08-CV-203, 2009 WL 1766105 (E.D. Tex. June 23, 2009)................................. 22

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
    845 F.3d 652 (5th Cir. 2017) ..................................................................... 20

*Vallone v. Agip Petroleum Co.*,
    705 S.W.2d 757 (Tex. App. - Houston [1st Dist.] 1986)................................... 17

*Vertex Servs., LLC v. Oceanwide Houston, Inc.*,
    583 S.W.3d 841 (Tex. App. 2019)................................................................. 19

*Waits v. Frito-Lay*, Inc.,
    978 F.2d 1093 (9th Cir. 1992) ................................................................... 14

*ZeniMax Media, Inc. v. Oculus VR, LLC*,
    No. 3:14-CV-01849-P, 2015 WL 11120970 (N.D. Tex. July 27, 2015) ......................... 16

*Zimmerman v. H.E. Butt Grocery Co.*,
    932 F.2d 469 (5th Cir. 1991) ..................................................................... 18

**Statutes**

15 U.S.C. § 1125(a) .............................................................................. 10

17 U.S.C. § 107(1) ................................................................................ 7

17 U.S.C. § 107(2) ................................................................................ 9

17 U.S.C. § 107(3) ................................................................................ 9

17 U.S.C. § 107(4) ............................................................................... 10

**Other Authorities**

5 *McCarthy on Trademarks and Unfair Competition* § 27:9 (4th ed.)........................ 12

5 *McCarthy on Trademarks and Unfair Competition* § 28:15 (4th ed.)...................... 14

Lanham Act § 1125(a) ............................................................................ 11

Lanham Act § 43...................................................................................................... 12

Lanham Act § 43(a)(1)(A) ....................................................................................... 13

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ....................................................... 1, 6, 7, 21

Plaintiff Mary Kay Inc. ("Mary Kay") files this Response and Brief in Opposition to Defendant Jennifer Bickel Cook's ("Cook") Partial Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.     <u>INTRODUCTION</u>

This lawsuit arises from Cook's publication of the book, *Pass It On: What I Learned from Mary Kay Ash* (the "Book"), in which Cook repackaged Mary Kay's copyrighted books and proprietary information and sold the resulting collection as her own work. As shown below, Mary Kay has pleaded more than sufficient facts to state the claims pleaded in the First Amended Complaint. Accordingly, this Court should deny Cook's Motion to Dismiss.

## II.     <u>STATEMENT OF FACTS</u>

### A.     **Mary Kay and Its Intellectual Property.**

Mary Kay is a global manufacturer and wholesale distributor of cosmetics, skin care products, toiletries, and other related products. (First Am. Compl. ¶ 14.) Mary Kay's products are sold in over thirty-five countries, including the United States, and the Mary Kay brand is recognized for its quality worldwide. (*Id*.)

Mary Kay devotes a significant amount of time, energy, and resources to protecting the value of its brand, products, name, and reputation. (First Am. Compl. ¶ 15.) Mary Kay products are promoted to consumers on its MaryKay.com website, print and digital catalogues and various social media sites, among other media. (*Id*.) Mary Kay products are sold to the public exclusively through Mary Kay's independent beauty consultants ("IBCs"), which currently number approximately 500,000 in the U.S. (*Id*.) IBCs market these products direct to consumers utilizing, among other direct sales methods, personal websites accessed through MaryKay.com, where customers can shop, browse, and communicate directly with their IBCs. (*Id*.)

To promote and protect its intellectual property rights, Mary Kay has registered numerous copyrights and trademarks with both the U.S. Copyright Office and U.S. Patent and Trademark Office, respectively, and has maintained the confidentiality of its trade secrets and other confidential information (collectively, the "IP"). (*Id.* ¶ 16.). Among other actions, Mary Kay has registered the following Copyrighted Works with the U.S. Copyright Office:

> • *Mary Kay - You Can Have It All*, Copyright Reg. No. TX 4-412-762, registered November 1, 1996;
>
> • *Mary Kay*, Copyright Reg. No. TX 842-917, registered January 25, 1982 (later renamed *Miracles Happen*);
>
> • *Mary Kay on People Management*, Copyright Reg. No. TX 1-449-374, registered November 6, 1984; and
>
> • *Words of Wisdom from Mary Kay Ash,* calendar of quotes, Copyright Reg. No. TX 6-371-107, registered April 19, 2006.

(*Id.*).   In the Copyrighted Works, founder Mary Kay Ash tells the story of her success and how she become one of America's foremost businesswomen. (*Id.* ¶ 17).

Mary Kay has developed other proprietary information, among other intellectual property ("IP"), through the use of extensive labor, skill and money by Mary Kay employees, IBCs and Mary Kay Ash herself. (First Am. Compl. ¶ 77.) Mary Kay owns the proprietary information, all of which remains valid and subsisting in full force and effect. (Complaint ¶ 78.)

**B.    Cook's Agreements with Mary Kay.**

Cook held various positions with Mary Kay from approximately 1974 through July 1, 2017, through which she gained access to or knowledge of Mary Kay's proprietary information, including in her role as personal assistant to company founder Mary Kay Ash. (First Am. Compl. ¶ 18.) Cook's last position as Director of the Mary Kay Museum involved curating, documenting

and organizing information, stories, photographs and documents relating to Mary Kay and Mary Kay Ash. (*Id*.) Cook also was Director of the Mary Kay Foundation and was paid by Mary Kay to attend independent sales force events, where she told stories to promote the legacy of Mary Kay Ash and gained access to the personal information of Mary Kay's independent sales force. (*Id*.)

During her employment, Cook agreed to the terms of an NDA and to Mary Kay's Employee Handbook in exchange for having access to Mary Kay's proprietary information. (First Am. Compl. ¶ 19.) In exchange for these rights, Cook agreed that she would not use proprietary information for her own benefit (or the benefit of anyone else), and would not disclose that proprietary information to anyone else, even after her employment with Mary Kay ended. (*Id*.) In the NDA, Cook acknowledged that her position with Mary Kay was "one of highest trust and confidence" given her access to this proprietary information, and she also agreed that she would not use that information for her own benefit (or the benefit of anyone else), and would not disclose that information to anyone else. (*Id*., citing NDA ¶¶ 2 & 3.) The Employee Handbook also prohibited Cook from "using the Company's logos, photos, trademarks, copyrights or any other intellectual property without the authorization of Mary Kay Inc." (*Id*., citing Employee Handbook, pg. 16.)

**C.     In September 2021, Mary Kay Learned About the Book And Tried, Unsuccessfully, to Obtain a Copy to Review.**

In September 2021, Mary Kay learned that Cook planned to publish what she described as a memoir about her experiences with Mary Kay Ash that could possibly contain Mary Kay's proprietary information and other IP, and that the publication date was planned for shortly thereafter, on October 5, 2021. (First Am. Compl. ¶ 22.)

Starting on September 27, 2021, Mary Kay made multiple requests that Cook provide a copy of the Book to Mary Kay so that it could assure itself that Cook had not improperly used any

of Mary Kay's proprietary information or other IP. (First Am. Compl. ¶ 23.) Mary Kay requires that creative works by current or former employees are "personal" and "original," and, if the works included Mary Kay's proprietary information, that such works be submitted to Mary Kay for review and approval as to the content, form, and the proposed method of distribution. (*Id*.) Mary Kay has this rule to protect its proprietary information. (*Id*.)

Although Cook at first promised that she would drop off copies of the Book by September 29, 2021 (less than a week before its planned publication date), she did not do so. (First Am. Compl. ¶ 24.) On September 29, 2021, Mary Kay's outside counsel wrote to Cook and her publisher. (First Am. Compl. ¶ 25.) Mary Kay asked, among other things, that Cook provide it with a copy of the Book by no later than 5:00 PM the following day; that her publisher delay the publication of the Book until Mary Kay had a chance to review it to determine if it contained any of its proprietary information; and that Cook agree not to contact any IBCs to ask that they promote the Book in violation of their contracts with Mary Kay. (*Id*.)

Cook did not respond until late afternoon on Friday, October 1, and the email misspelled outside counsel's email address such that counsel did not receive the email until Monday, October 4 (one day before the Book's publication date). (First Am. Compl. ¶ 26.) In that email, Cook's representative provided a PDF of the Book, and that was the first time Mary Kay had an opportunity to review its contents. (*Id*.)

**D.    The Book Copies Wholesale Portions of the Copyrighted Works and Misappropriates Mary Kay's Proprietary Information In Breach of Cook's Contracts And Continuing Fiduciary Duties.**

The Book was published on October 5, 2021. (First Am. Compl. ¶ 27.) Upon information and belief, Cook intentionally withheld the Book from Mary Kay prior to its publication, despite Mary Kay's multiple efforts to receive a copy and warnings that the Book might contain Mary Kay's proprietary information, because she wanted to delay Mary Kay's discovery of her use of

its proprietary information until after the Book was published. (*Id*.) As discovered upon Mary Kay's review of the Book, Cook knowingly, willfully and intentionally misappropriated Mary Kay's proprietary information in the Book. (First Am. Compl. ¶ 79.)

The Book contains *verbatim* passages from pre-existing, Mary Kay-owned publications, and includes stories Cook was paid to tell at Mary Kay-sponsored events and curate for the Mary Kay Museum during her employment, as opposed to stories deriving from Cook's personal knowledge or interactions with Mary Kay Ash. (First. Am. Compl. ¶ 28.). A review of the "End Notes" to the Book shows that Cook has access to – and indeed copied from – Mary Kay's Copyrighted Works, including copying portions of: (a) *Mary Kay - You Can Have It All* in seven chapters, (b) *Mary Kay* in five chapters, and (c) *Mary Kay on People Management* in three chapters, among other Copyrighted Works. (*Id*. ¶ 29). Mary Kay attached an Appendix A to the First Amended Complaint that includes a selection of examples of Cook's copying.

Cook combined passages and stories from the Copyrighted Works and turned them into a new collection that she is passing off as a new book of "her" memoir and lessons "she" learned. (*Id.* ¶ 30.). In fact, the Book contains just two to three chapters of original content—Cook's personal thoughts and observations—and the remaining chapters are paraphrases or verbatim copies of the Copyrighted Works and of stories Cook gathered from employees and members of the Mary Kay independent sales force as part of her role as Director of the Mary Kay Museum. (*Id.*) As but one example, Cook repeats the same story in the Book (see pages 12-13) that appears in the section "Lighten Up" from Mary Kay's *Mary Kay - You Can Have It All*. (*Id.*)

Further, Cook's misappropriation of Mary Kay's proprietary information is a violation of her NDA, the Employee Handbook, and of her fiduciary duties to her former employer. (First Am. Compl. ¶ 33.) Cook and Mary Kay were subject to an employer-employee fiduciary relationship for more than forty years, with obligations of loyalty that continued after Cook's departure from

---

Mary Kay. (First Am. Compl. ¶ 85.) Cook has known of her fiduciary duties as a former Mary Kay employee herself by signing the NDA and terms of the Employee Handbook. (First Am. Compl. ¶ 86.) Despite having knowledge of this duty, Cook willfully, intentionally and knowingly included elements of and references to Mary Kay's proprietary information that Cook had a duty to keep confidential both as an employee and after her departure from Mary Kay in the Book; not making reasonable use of the confidence placed in her by Mary Kay. (*Id.* ¶ 87.)

### III.   ARGUMENTS AND AUTHORITIES

**A.      Legal Standard.**

To survive a Rule 12(b)(6) motion, the Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citation omitted). In the Fifth Circuit, motions to dismiss brought under Rule 12(b)(6) "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). In reviewing a motion to dismiss, the Court must accept as true all well-pled facts in the complaint and view those facts in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).

**B.      The Fair Use Defense Does Not Bar Mary Kay's Copyright Infringement Claims.**

The Court should deny Cook's motion to dismiss Mary Kay's copyright infringement claims. Dismissal under Rule 12(b)(6) is appropriate based on a successful affirmative defense only when the defense appears clearly on the face of the complaint. *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). In analyzing a fair use defense, the court engages in a fact-specific inquiry involving the application of the following factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2)

the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted act. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994).

Given the nature of this inquiry, fair use is treated as a "mixed question" of law and fact. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985). Considering the court's narrow inquiry on a motion to dismiss brought under Rule 12(b)(6), courts rarely analyze fair use at this stage. *Nichols v. Club for Growth Action*, 235 F. Supp. 3d 289, 295 (D.D.C. 2017); *Browne v. McCain*, 612 F. Supp. 2d 1125, 1130 (C.D. Cal. 2009). Indeed, "[w]hen discovery is needed to flesh out how these factors tilt, a ruling at the pleading stage is premature." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). As shown below, Mary Kay has alleged more than sufficient facts to overcome Cook's fair use defense.

(i)     Factor One

The first factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). This involves three considerations: (a) commerciality; (b) whether the user acted in good faith; and (c) whether the use is "transformative," meaning it "adds something new" to the copyrighted work. *Bell*, 27 F.4th at 321-22. Here, Cook concedes the Book is meant to be sold to the public and is therefore of a *commercial* nature. Mot. at 5. And Mary Kay has alleged more than sufficient facts to show Cook's lack of good faith and the non-transformative use of the copyrighted materials.

With respect to good faith, Mary Kay alleged: (a) that during her employment with Mary Kay, Cook agreed not to use Mary Kay's "logos, photos, trademarks, copyrights, or any other intellectual property without the authorization of Mary Kay Inc." (Am. Compl. ¶ 20); (b) that Mary Kay required current and former employees to submit creative works to Mary Kay for review and approval as to the content, form, and the proposed method of distribution (Am. Compl. ¶ 23); and

(c) that Cook failed to provide a copy of the manuscript to Mary Kay prior to publication despite Mary Kay's request and her promise to do so (Am. Compl. ¶ 24). The propriety of Cook's conduct factors into this determination because "fair use presupposes good faith and fair dealing" on the part of the alleged infringer. *Bell*, 27 F.4th at 322. And Mary Kay has alleged facts to suggest that Cook lacked good faith by violating these agreements with Mary Kay to hide her infringement from the company before the publication date. *See* Am. Compl. ¶ 27 ("Cook intentionally withheld the Book from Mary Kay prior to publication…because she wanted to delay Mary Kay's discovery of her use of its IP until after the Book was published.").

Finally, Cook's use of the copyrighted materials is ***not*** transformative. Far from it. Cook argues that the Book is based on her own interactions with Mary Kay Ash. Mot. at 6. But Mary Kay alleges: (a) that the "Book contains *verbatim* passages from pre-existing, Mary Kay-owned publications, and includes stories Cook was paid to tell at Mary Kay-sponsored events and curate for the Mary Kay Museum during her employment, as opposed to stories deriving from Cook's personal knowledge or interactions with Mary Kay Ash" (Am. Compl. ¶ 28); (b) that Cook "combined passages and stories from the Copyrighted Works and turned them into a new collection that she is passing off as a new book of 'her' memoir and lessons 'she' learned" (Am. Compl. ¶ 30); (c) and that the "Book contains just two to three chapters of original content…and the remaining chapters are paraphrases or verbatim copies of the Copyrighted Works" (Am. Compl. ¶ 30). The Court cannot resolve these issues at the pleading stage. The allegations in the Amended Complaint, coupled with Cook's own concession, are more than sufficient to show Cook's lack of good faith and the non-transformative character of the Book. Accordingly, the Court should find the first factor favors Mary Kay.

     *(ii)    Factor Two*

The second factor is "the nature of the copyrighted work." 17 U.S.C. § 107(2). To determine the nature of the work, the court considers "whether the work has been appropriated for its 'expressive elements,' rather than to disseminate 'the underlying facts.'" *Bell*, 27 F.4th at 323 (citing *Harper & Row*, 471 U.S. at 563-64). The Court must also consider "whether the work has been published, as the scope of fair use is 'narrower with respect to unpublished works." *Id.* Here, Cook concedes the Copyrighted Works were published by Mary Kay. Mot. at 6. And there is a clear dispute between the parties about the nature of the Book. Cook alleges she wrote a "factual book of first-hand recollections of real-life events." *Id.* at 6. Mary Kay, by contrast, alleges the "Book contains just two or three chapters of original content…and the remaining chapters are paraphrases or verbatim copies of the Copyrighted Works." Am. Compl. ¶ 20. The Court cannot resolve this issue at the pleading stage. Again, a ruling at the pleading stage is premature when "discovery is needed to flesh out how these factors tilt." *Bell,* 27 F.4th at 320. Accordingly, this factor favors Mary Kay because the Court must accept Mary Kay's allegations as true at the pleading stage.

    *(iii)*    *Factor Three*

The third factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). The Court must consider "whether the amount copied is either a quantitatively or qualitatively significant part of the original." *Bell*, 27 F.4th 324. "Even a relatively small amount of copying can weigh against fair use if it captures 'the heart' of the work." *Id.* (citing *Harper & Row*, 471 U.S. at 565). Here, Mary Kay alleges Cook copied from "(a) *Mary Kay – You Can Have it All* in seven chapters [of the Book], (b) *Mary Kay* in five chapters [of the Book], and (c) *Mary Kay on People Management* in three chapters [of the Book], among other Copyrighted Works." Am. Compl. ¶ 29. Mary Kay also attached a 6-page, color-coded Appendix to the Amended Complaint demonstrating the amount and substantiality of

the copying at issue. This factor supports Mary Kay, especially the pleading stage, given both the quantity of the copying and the qualitative nature of the passages copied.

   *(iv)    Factor Four*

   The fourth factor examines "the effect of the use" on the market for and the value of the copyrighted work. 17 U.S.C. § 107(4). This factor requires the Court to consider the market harm, but also "whether widespread use of the work in the same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original work and any derivatives." *Bell*, 27 F.4th at 324 (citing *Campbell*, 510 U.S. at 590). The Court cannot evaluate this factor without further discovery. Simply put, the potential market for or value of the Copyrighted Works cannot be evaluated from the face of the Amended Complaint, so it is inappropriate to conduct this fact-intensive fair-use analysis at this stage of the litigation. *See Bell*, 27 F.4th at 321 (stating courts give particular attention to factors one and four (the purpose and market effect of use)); *Geophysical Servs., Inc. v. TGS-NOPEC Geophysical Servs.*, Civ. A. No. 14-1368, 2017 WL 559859, at *13 (S.D. Tex. Nov. 21, 2017); *see also Campbell*, 510 U.S. at 594 ("[I]t is impossible to deal with the fourth factor except by recognizing that a silent record on an important factor bearing on fair use disentitled the proponent of the defense."). For these reasons, the Court should deny Cook's motion to dismiss based on fair use.

**C.    The Court Should Deny Cook's Motion to Dismiss Mary Kay's Lanham Act Claim.**

   The Court should deny Cook's Motion to Dismiss Mary Kay's false endorsement claim brought pursuant to § 1125(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a) (making liable "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or devise, or any combination thereof . . . which (A) is likely to cause confusion, or cause mistake, ***or to deceive as to the affiliation, connection, or association of such person with another person*** . . .") (emphasis added). Courts recognize that the Lanham Act provides ***two***

general theories of liability: (1) false representations regarding the origin, endorsement, or association of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ("false endorsement" or "false association"); and (2) false representations in advertising concerning the quality of services or goods ("false advertising"). *See, e.g., Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1021 (3d Cir. 2008); *Parks v. LaFace Records*, 329 F.3d 437, 445 (6th Cir. 2003); *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.,* 9 F.3d 561, 575 (7th Cir. 1993); *see also 5 McCarthy on Trademarks and Unfair Competition* § 27:9 (4th ed.) (discussing two prongs of section 43(a)).

Cook misunderstands the Mary Kay's claim and cites the elements of a false advertising claims, not a false endorsement or false association claim. *See* Mot. at 9. The Fifth Circuit interprets Section 43 of the Lanham Act to provide protection against a "myriad of deceptive commercial practices. *See Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 494–95 (5th Cir. 2000) (quoting *Seven–Up Co. v. Coca–Cola Co.*, 86 F.3d 1379, 1387 (5th Cir. 1996)) (discussing false advertising). And it has recognized that the "false representations in advertising" prong can include false representations as to "the product's endorsement by the plaintiff." *Better Bus. Bureau of Metro. Houston, Inc. v. Med. Directors, Inc.*, 681 F.2d 397, 400 (5th Cir. 1982).

To prove a violation of Section 43(a)(1)(A) of the Lanham Act in a ***false endorsement*** case, a plaintiff must show that: (1) "its mark is legally protectable;" (2) "it owns the mark;" and (3) "the defendant's use of the mark to identify its goods or services is likely to create confusion concerning the plaintiff's sponsorship or approval of those goods or services." *Facenda*, 542 F.3d at 1014 (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)); *see also Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992) (noting that a false endorsement claim alleges "the misuse of a trademark" that is "likely to confuse consumers as to the plaintiff's sponsorship or approval of the product"); *Stayart v. Yahoo! Inc.*, 651 F. Supp.

2d 873, 880–81 (E.D. Wis. 2009) (finding that false endorsement occurs when there is an "unauthorized use of a celebrity's identity" and the "misuse of a trademark" that is likely to cause consumer confusion), *aff'd*, 623 F.3d 436 (7th Cir. 2010).

And courts have also acknowledged that consumer confusion as to the plaintiff's approval or sponsorship of a product is "the controlling issue" in a false endorsement claim. *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 926 (6th Cir. 2003); *Stayart*, 651 F.Supp.2d at 880 (noting that the "key issue in a false endorsement case" is consumer confusion); *see generally* 5 *McCarthy on Trademarks and Unfair Competition* § 28:15 (4th ed.) (noting that a false endorsement claim could be evaluated under a trademark infringement analysis or under the false advertising prong of the Lanham Act but recognizing that "almost all courts have put false endorsement cases within the infringement prong ... not within the false advertising prong....").

Here, Mary Kay has alleged that Cook, in connection with the sales of her Book, has used "words, terms, names, and photographs which are likely to deceive consumers into wrongfully believing that the Book is in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay [the company]." Am. Compl. ¶ 64. Mary Kay alleges that Cook's use of these materials "in a manner that creates consumer confusion of an endorsement that does not exist." *Id.* at ¶ 65. Mary Kay has further alleged specific examples of the ways in which Cook has wrongfully portrayed the Book as endorsed by Mary Kay: ¶ 34 (alleging Cook's presence at Mary Kay events and her prominent role in the Company prior to her departure leads consumers to believe the Book was sponsored or endorsed by Mary Kay); ¶ 35 (alleging the title of the Book includes Mary Kay Ash's name and that the cover of the Book is in a pink similar to the Company's well-recognized "Mary Kay Pink;" ¶ 35 (alleging the Book includes 15 pages of photographs from Mary Kay corporate events and that Cook has marketed the Book by touting her work at Mary Kay). And contrary to Cook's representation in her motion (see Mot. at 9), Mary

Kay has alleged that it has suffered injury. Am. Compl. ¶ 37 ("As a proximate result of Cook's actions, Mary Kay has suffered, and will continue to suffer, significant monetary harm including, but not limited to, loss of sales, damage to the value of its IP, harm to the goodwill associated with its family of brands, and damage to its existing and potential business relations."). These specific allegations are more than sufficient to state a claim for false endorsement under the Lanham Act.

**D.    The Motion Should Be Denied As To The Breach Of Contract Claim Because Both Mary Kay's Employee Handbook And Cook's NDA Are Contracts.**

As Cook concedes, under both the NDA and Employee Handbook, Cook "agreed not to disclose or use any such proprietary information for her own benefit," and that Mary Kay argues that Cook breached these agreements "by using Mary Kay's proprietary information for her own benefit and the benefit of others." However, Cook alleges that the NDA and the Employee Handbook are not enforceable contracts. The Court should deny these arguments as unsupported by law.

First, Mary Kay has properly alleged that the NDA is an enforceable contract, and there is ample support under Texas law that NDAs are enforceable contracts. *See, e.g., ZeniMax Media, Inc. v. Oculus VR, LLC*, No. 3:14-CV-01849-P, 2015 WL 11120970, at *6-7 (N.D. Tex. July 27, 2015) (holding that a complaint plausibly pleads a breach of contract for an NDA if it alleges a "reasonable inference that the proprietary information that Plaintiffs provided [Defendant] was sufficiently beneficial to them" (as proof of consideration) and that a party is bound by an NDA because it "requested, received, used, and benefited from confidential information only available to it under the NDA"); *RedMeatMedia v. Strategic Am., Inc.*, No. SA-13-CA-347-FB, 2013 WL 12131904, at *23 (W.D. Tex. Nov. 21, 2013) (proof of signature on the NDA by the Defendant "supports the conclusion that [Plaintiff has] stated a claim for relief for 'breach of the Non-Disclosure Agreement'"); *Orthopro, Inc. v. Arthrex, Inc.*, No. 308-CV-1315-L, 2009 WL

1374773, at *3-4 (N.D. Tex. May 18, 2009) (holding that an NDA includes provisions that are "sufficiently definite to create an enforceable contract," such as "mutual promises to each other" and a "remedy for breach of the agreement"). Here, the NDA signed by Cook states that her obligations under the NDA "shall continue whether or not [her] work as an employee with Mary Kay shall be terminated voluntarily or involuntarily, with or without cause," and is executed "in consideration of [her] continuing to gain access or knowledge of" Mary Kay's proprietary information. (*See* NDA ¶ 9.) As a result, the cause of action for breach of contract should survive Cook's Motion, as there is a plausible claim for relief based on the NDA clearly being considered a contract under Texas law.

The Court therefore need not reach Cook's arguments as to the Employee Handbook, though these arguments also fail. Cook cites multiple cases for the alleged proposition that "personnel manuals and employee handbooks" cannot be contracts. But these cases all involve a former *employee* seeking to enforce the handbook as an agreement against an *employer* to establish that they were not at-will employees. *See Joachim v. AT&T Info. Sys*., 793 F.2d 113, 114 (5th Cir. 1986) (holding that an employee trying to enforce a contract had "no basis for challenging his discharge unless the employee handbook gave him a contractual right"); *Crum v. Am. Airlines, Inc*., 946 F.2d 423, 426 (5th Cir. 1991) (ruling that an at-will employee could not enforce his employment application and rules manual as a contract against his employer after being terminated); *Hicks v. Baylor Univ. Med. Center*, 789 S.W.2d 299, 302 (Tex.App.-Dallas 1990) (finding that an employee handbook did not circumscribe an employer's ability to dismiss employee when unaccompanied by an express agreement); *Vallone v. Agip Petroleum Co*., 705 S.W.2d 757, 759 (Tex.App.-Houston [1st Dist.] 1986) (holding that former at-will employee had no cause of action for wrongful discharge by employer); *Reynolds Mfg. Co. v. Mendoza*, 644 S.W.2d 536, 539 (Tex.App.-Corpus Christi 1982) (ruling that handbook could not be read as

contractual limitation on employer's power to terminate at-will employee); *Glagola v. North Tex. Mun. Water Dist.*, 705 F.Supp. 1220, 1223 (E.D. Tex. 1989) (finding that an employee handbook may not limit an employer's ability to terminate an at-will employee); *Zimmerman v. H.E. Butt Grocery Co.*, 932 F.2d 469, 471-72 (5th Cir. 1991) (holding that compliance with employee manual should not be turned against an employer as evidence that it treated the manual as a contract when an employee sought to use it to establish recovery of lost wages and benefits); *Searcy v. DDA, Inc.*, 201 S.W.3d 319, 322 (Tex. App.-Dallas 2006) (holding that former at-will employee failed to identify a commission contract it could assert against its former employer).

Astoundingly, Cook cites *no* authority that concludes that an Employee Handbook is not an enforceable contract in the context of misappropriation of proprietary information, as is the case here; a telling absence. Nor does Cook cite any authority where there exists a separate NDA that also binds the employee to protect her employer's proprietary information. Cook knew of her obligations to Mary Kay, and that is why, as is alleged, she intentionally withheld the Book from Mary Kay prior to its publication, despite Mary Kay's multiple efforts to receive a copy and warnings that the Book might contain Mary Kay's proprietary information. Cook understood her contractual obligations and wanted to forestall Mary Kay from learning of her breach.

**E.  Mary Kay's Claim For Common Law Misappropriation Is Not Preempted By The Copyright Act Because It Involves Proprietary Information Not Protected by Copyright.**

Cook concedes, as she must, that Mary Kay has properly alleged a common law misappropriation claim. She therefore attempts to argue that the claim is preempted by the Copyright Act. Yet, this claim expressly *excludes* Mary Kay's copyrighted works; it specifically argues that Cook misappropriated Mary Kay's "proprietary information," which was created through the use of labor, skill, and money by Mary Kay employees.

A cause of action for common law misappropriation may **not** preempted by the Copyright Act if the information at issue is proprietary information "created through extensive time, labor, skill, and money" that the defendant uses to unfairly compete with plaintiff. *BP Auto., L.P. v. RML Waxahachie Dodge, L.L.C.*, 448 S.W.3d 562, 571-72 (Tex. App. 2014)*; see also Vertex Servs., LLC v. Oceanwide Houston, Inc.*, 583 S.W.3d 841, 849 (Tex. App. 2019) (holding that claims under this cause of action cover property interests "regardless of subject matter, so long as that matter confers on [the owner] a commercial advantage"). Here, in the Book, Cook references Mary Kay's stories, documents and other proprietary information which are not subject to a registered copyright and, by doing so, directly competes with several of Mary Kay's other books that include related information. Also, Mary Kay's proprietary information has developed over decades through the "extensive time, labor, skill and money" of Mary Kay, its founder Mary Kay Ash, and its IBCs, and gives Mary Kay a commercial advantage over its competitors, like the lists and information that the *BP Auto* court held were not pre-empted.

Additionally, the cases that Cook cites to argue in favor of preemption can be distinguished from the facts here. For example, *Digital Drilling* does not involve a claim for common law misappropriation, nor was the claim at issue ultimately preempted by the Copyright Act. *See Digital Drilling Data Sys., L.L.C. v. Petrolink Svcs., Inc.*, 965 F.3d 365, 377 (5th Cir. 2020). Other cases, such as *Ultraflo* and *Motion Med.*, both pertain to specifically copyrightable materials being misappropriated, as opposed to "proprietary information." *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 658 (5th Cir. 2017); *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 775 (5th Cir. 2017). Further, *Alcatel* preempts claims of misappropriation of copyrightable subject matter, but acknowledges that claims for misappropriation of material that is not subject to copyright may be allowed. *See Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 787-789 (5th Cir. 1999). As a result, because Mary Kay's proprietary information,

independent from its copyrighted works, is the subject of its common law misappropriation cause of action, the claim is not preempted, and the Motion should be denied.

**F.     Mary Kay's Breach of Fiduciary Claim Should Proceed Because Cook's Fiduciary Duty Protecting Mary Kay's Proprietary Information Continues Post-Employment.**

Cook concedes that the actions Mary Kay alleges would breach a fiduciary duty, but instead seeks to argue that she does not owe any such duty to her employer of more than four decades. Cook claims that a former employee's fiduciary duty only exists after termination to the extent that there are trade secrets involved, and that such duty would have expired given the length of time since Cook's departure.

Contrary to Cook's argument, courts in Texas have concluded that fiduciary duties, which can include an employee's obligation not to use "proprietary information acquired during the relationship in a manner adverse to the employer," continue "even after the employment relationship ends." *Heat Shrink Innovations, LLC v. Med. Extrusion Techs.-Texas, Inc*., No. 02-12-00512-CV, 2014 WL 5307191, at *10-11 (Tex. App. Oct. 16, 2014)*; see also RenewData Corp. v. Strickler*, No. 03-05-00273-CV, 2006 WL 504998, at *12 (Tex. App. Mar. 3, 2006) (holding that a former employee's obligation not to use "proprietary information acquired" during employment in a manner adverse to the employer survived beyond the termination of employment); *Miller Paper Co. v. Roberts Paper Co*., 901 S.W.2d 593, 600-602 (Tex. App. 1995) (noting that an employee's duty not to use proprietary information against employer "survives termination of employment," and that while the employee was free to compete with former employer, "not with the material developed by or on behalf of" the former employer). In any case, a Rule 12(b)(6) motion "is not the appropriate avenue" for attacking a plaintiff's breach of fiduciary duty claims, particularly those arising from the terms of an NDA, as is the case here. *Techsys Chassis, Inc. v. Sullair Corp*., No. 4:08-CV-203, 2009 WL 1766105, at *3 (E.D. Tex. June

23, 2009) (denying Defendant's request to dismiss a breach of fiduciary duty claim based on 'the written terms found in [an] NDA"). Therefore, the Motion should also be denied as to the breach of fiduciary duty claim.

**G.      The Court Should Deny Cook's Motion to Dismiss Mary Kay's Claim for Tortious Interference.**

This Court should deny Cook's motion to dismiss Mary Kay's claim for tortious interference. To plead a claim for tortious interference, Mary Kay must allege (1) a contract subject to interference; (2) a willful and intentional act of interference; and (3) the act was a proximate cause of actual damages or loss. *Prudential Ins. Co. v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). Mary Kay alleges facts to support each of those elements. Specifically, Mary Kay has alleged that it "enters into standard agreements with Sales Force members," and that these agreements "prohibit the members from promoting, distributing, or selling products that are not official Mary Kay products." Am. Compl. ¶ 91. With respect to the second element, Mary Kay alleges that Cook knows of this prohibition (Am. Compl. ¶ 92), and that despite her knowledge, has "willfully, intentionally, and knowingly interfered with the contracts of members of Mary Kay's independent sales force" by "persuading Sales Force Members to promote, distribute, and sell the Book." Am. Compl. ¶ 93. Finally, with respect to the third element, Mary Kay alleges that it has suffered harm as a result of Cook's interference. Am. Compl. ¶ 96. The Court should deny Cook's motion to dismiss because it has alleged facts to support each element of the claims.

## IV.      CONCLUSION

For the foregoing reasons, Mary Kay respectfully requests that the Court deny Cook's Motion to Dismiss in its entirety.

DATED: July 8, 2022                           Respectfully submitted,

                                              */s/ Christopher J. Schwegmann*
                                              Christopher J. Schwegmann
                                              State Bar No. 24051315
                                              cschwegmann@lynnllp.com

                                              **LYNN PINKER HURST & SCHWEGMANN, LLP**
                                              2100 Ross Avenue, Suite 2700
                                              Dallas, Texas 75201
                                              (214) 981-3800 – Telephone
                                              (214) 981-3829 – Facsimile

                                              **ATTORNEYS FOR MARY KAY INC.**


**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been served on

all counsel of record via electronic notification on July 8, 2022.


                                              */s/ Christopher J. Schwegmann*
                                              Christopher J. Schwegmann