IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARY KAY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 3:21-cv-02543-C |
| | § | |
| JENNIFER BICKEL COOK, | § | |
| | § | |
| Defendant. | § | |

# BRIEF IN SUPPORT OF DEFENDANT'S
# <u>MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................. 2

III.  SUMMARY JUDGMENT STANDARD .......................................................................... 3

IV.   ARGUMENT & AUTHORITIES ...................................................................................... 5

   A.  Copyright Infringement Claim (First Cause of Action)............................................... 5

      1.  Mary Kay's copyright claim fails under the Fair Use Doctrine. ........................... 5

         a)   Factor one. ....................................................................................................... 7

         b)   Factor two. ....................................................................................................... 8

         c)   Factor three. ..................................................................................................... 9

         d)   Factor four. ....................................................................................................... 9

      2.  Mary Kay has no evidence of damages. ............................................................... 10

   B.  False Endorsement Claim (Second Cause of Action)............................................... 12

   C.  Breach of Contract Claim (Third Cause of Action).................................................. 14

   D.  Common Law Misappropriation Claim (Fourth Cause of Action)........................... 16

   E.  Breach of Fiduriary Duty Claim (Fifth Cause of Action).......................................... 17

   F.  Tortious Interference with Contract Claim (Sixth Cause of Action)........................ 18

V.    CONCLUSION ................................................................................................................ 20

VI.   PRAYER........................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986).................................................................................................. 3

*Armendariz v. Mora*,
553 S.W.2d 400 (Tex. App. – El Paso, 1977)........................................................... 19

*Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*,
27 F.4th 313 (5th Cir. 2022) ...........................................................................5-6, 8, 10

*Buck v. Federal Deposit Ins. Co.*,
75 F.3d 1285 (8th Cir. 1996) ..................................................................................... 4

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994).........................................................................................6, 9-10

*Celotex Corp. v. Catrell*,
477 U.S. 317 (1986)................................................................................................3-4

*Dow v. United Brotherhood of Carpenters and Joiners of Am.*,
1 F.3d 56 (1st Cir. 1993).......................................................................................... 4

*Dryer v. Nat'l Football League*,
814 F.3d 938 (8th Cir. 2016) ................................................................................... 13

*Fisher v. Dees*,
794 F.2d 432 (9th Cir. 1986)......................................................................................6

*Google LLC v. Oracle Am., Inc.*,
—— U.S. ——, 141 S. Ct. 1183 (2021).................................................................... 7

*Harper & Row Publrs. v. Nation Enters.*,
471 U.S. 539 (1985)............................................................................................5-8, 10

*Hill v. Heritage Res., Inc.*,
964 S.W.2d 89 (Tex. App.—El Paso 1997, pet. denied))......................................... 19

*International Ass'n of Machinist & Aerospace Workers v. Intercontinental Mfg. Co.*,
812 F.2d 219 (5th Cir. 1987) ................................................................................... 4

*Johnson v. Brewer & Pritchard, P.C.*,
73 S.W.3d 193 (Tex. 2002)...................................................................................... 17

*Klayman v. Judicial Watch, Inc.*
6 F.4th 1301 (D.C. Cir. 2021), *cert. denied*, No. 21-1264,
2022 WL 1528530 (U.S. May 16, 2022) ........................................................................ 13

*Lexmark Intern., Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ....................................................................................................... 13

*Little v. Liquid Air Corp.,*
37 F.3d 1069 (5th Cir. 1994) .........................................................................................3-4

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) .......................................................................................................... 3

*Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ........................................................................................................3-4

*Prudential Ins. Co. of America v. Financial Review Services, Inc.*,
29 S.W.3d 74 (Tex. 2000) ............................................................................................... 18

*Stewart v. Abend*,
495 U.S. 207 (1990) ......................................................................................................6, 8

*State National Bank of El Paso v. Farah Mfg.*,
678 S.W.2d 661 (Tex. App. – El Paso, 1984) ..................................................................19

*Williams v. First Tennessee Nat. Corp.*,
97 S.W.3d 798 (Tex. App. – Dallas 2003, no pet.)......................................................... 15

**STATUTES**

15 U.S.C. § 1125....................................................................................................... 13

17 U.S.C. § 107............................................................................................................7,9

17 U.S.C. § 504........................................................................................................... 11

**RULES**

FED. R. CIV. P. 26 ....................................................................................................2, 12

FED. R. CIV. P. 56 ................................................................................................... 3-4, 20

# I.

# __INTRODUCTION__

By this suit, Plaintiff Mary Kay, Inc. ("Mary Kay" or "Plaintiff") asserts causes of action against Defendant Jennifer Bickel Cook ("Cook" or "Defendant") for copyright infringement, violation of the Lanham Act, breach of fiduciary duty, breach of contract, misappropriation of trade secrets and tortious interference with contract, all arising out of Cook's publishing of a book containing her long-time experience working with Mary Kay's now deceased founder, Mary Kay Ash (Dkt. 18). Cook's book, entitled *Pass It On: What I Learned from Mary Kay Ash* (the "Book"), is a first-person account of Cook's own observations and experiences as Mary Kay Ash's assistant, confidant, and close friend for over 40 years, in which Cook praises Mary Kay Ash throughout.

The gaping holes in Mary Kay's lawsuit are many. First, the Book is entirely protected from Mary Kay's copyright infringement claim under the fair use doctrine. The Court can, at the summary judgment stage, review the Book and the allegedly infringed portions and decide as a matter of law whether the fair use doctrine protects publication of the Book and precludes Mary Kay's copyright infringement claim.

Additionally, all of Mary Kay's other causes of action identified in the Complaint arise out of its claim that Cook purportedly took and used certain proprietary information and/or trade secrets when she wrote the Book. However, despite being repeatedly requested to identify what specific proprietary information and/or trade secrets owned by Mary Kay was taken and used by Cook, Mary Kay has not been able to do so.

Finally, even assuming Mary Kay can overcome these hurdles, Mary Kay cannot provide any competent evidence of damages that were proximately caused by Cook. Cook has repeatedly

requested Mary Kay to identify its damages and provide evidence of same. However, Mary Kay has not specified any damages nor has it produced evidence of any damages it has purportedly suffered. And, Mary Kay also failed to designate an expert to testify regarding its purported damages, and the expert designation deadline has now expired.

Through this motion, Cook has refuted as a matter of law one or more elements of Mary Kay's causes of action. In addition or in the alternative, Mary Kay does not have any evidence to establish each and every element of all of its causes of action against Cook. Accordingly, Cook is entitled to summary judgment.

## II.

## BACKGROUND

This lawsuit has been pending since Mary Kay filed its original complaint on October 15, 2021 (Dkt. 1). On January 11, 2022, the Court entered a Scheduling Order in this case, whereby it set a trial date of April 3, 2023 and a deadline for filing dispositive motions of January 16, 2023[1] (Dkt. 18). Under the Federal Rules of Civil Procedure, Mary Kay's deadline to designate any experts it intended to have testify at trial and provide any expert reports, including but not limited to any experts to testify regarding its damages, was 90 days before trial – January 3, 2023. FED. R. CIV. P. 26(a)(2)(A)-(B), (D)(1). To date, Mary Kay has not designated any experts, including any experts to testify regarding its alleged damages, and its deadline to do so has passed.

Additionally, Cook served discovery on Mary Kay in order to ascertain, among other things, a description and evidence of the proprietary information and/or trade secrets that it

---

[1] Since January 16, 2023 is a legal holiday, the deadline for filing dispositive motions is extend to January 17, 2023. FED. R. CIV. P. 6(a)(1)(C). Additionally, the Clerk's Office was inaccessible due to ECF maintenance on January 16, 2023. *See* https://www.txnd.uscourts.gov/news/ecf-will-be-down-scheduled-maintenance-january-13-500-pm-january-17-700-am. This also extends the deadline for filing to January 17, 2023. FED. R. CIV. P. 6(a)(3)(A).

claims Cook allegedly took and used to write the Book, as well as a calculation and evidence of Mary Kay's damages. Despite the fact that these requests were served nearly a year ago and this case is set for trial in less than 90 days, Mary Kay has not provided evidence of either. Thus, this case is ripe for summary judgment.

## III.

## SUMMARY JUDGMENT STANDARD

The Supreme Court has made it clear that Federal Rule of Civil Procedure 56 is to be utilized to summarily dispose of cases in which there is insufficient evidence to proceed to trial. *Celotex Corp. v. Catrell*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Specifically, Rule 56(c) provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED. R. CIV. P. 56(c).  "The purpose of Rule 56 is to enable a party who believes that there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).  Accordingly, after an adequate time for discovery has passed, Rule 56 "mandates" entry of summary judgment if the party with the burden of proof cannot make a showing sufficient to establish the existence of an element essential to that party's case.  *Celotex*, 477 U.S. at 322.  *See also* FED. R. CIV. P. 56(e); *and Little v. Liquid Air Corp.,* 37 F.3d 1069, 1076 (5th Cir. 1994) (A defendant should not "be required to bear the unnecessary costs of delay and trial to defend against a claim that has no merit.  Neither

party should be required to bear the costs of trying all of the issues in a case when some can and should be resolved on summary judgment.").

Summary judgment is therefore appropriate when there is no evidence to support the plaintiff's allegations.  *Celotex*, 477 U.S. at 325.  When the plaintiff bears the burden of proof, the defendant must demonstrate "that there is an absence of evidence to support the non-moving party's case*.*"  *Buck v. Federal Deposit Ins. Co.,* 75 F.3d 1285, 1289 (8th Cir. 1996) (*citing Celotex,* 477 U.S. at 325.)  *See also International Ass'n of Machinist & Aerospace Workers v. Intercontinental Mfg. Co*., 812 F.2d 219, 222 (5th Cir. 1987) ("A defendant moving for summary judgment can rely on the absence of evidence to support an essential element of the plaintiff's case.")  The movant need "not *negate* the elements of the non-movant's case."  *Little*, 37 F.3d at 1075 (*citing Celotex*, 477 U.S. at 323).

If the movant meets this burden, "the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Id.*  (*citing Celotex*, 477 U.S. at 325).  Neither conclusive allegations nor unsubstantiated assertions will satisfy the non-movant's burden.  *Id.*  Furthermore, pleadings cannot be considered competent evidence to support the non-movant's response.  *Id*.  Rule 56(e) requires the non-movant to designate "specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324-25. "Brash conjecture coupled with earnest hope that something concrete will materialize is insufficient to block summary judgment." *Dow v. United Brotherhood of Carpenters and Joiners of Am.,* 1 F.3d 56, 58 (1st Cir. 1993). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment should be granted. *Matsushita*, 475 U.S. at 587 (quotation omitted).

# IV.

## ARGUMENT & AUTHORITIES

**A)   Copyright Infringement Claim (First Cause of Action).**

Mary Kay alleges in its First Amended Complaint ("Complaint") that it possesses the copyright rights in four copyrighted works written by Mary Kay's founder, Mary Kay Ash (collectively the "Copyrighted Works"), which it claims are valid and subsisting and in full force and effect.[2] According to Mary Kay, Cook quoted certain passages from the Copyrighted Works in the Book, all of which were cited in the End Notes.[3] Mary Kay alleges that Cook never asked its permission to use these quoted passages from the Copyrighted Works in the Book, and that Cook's act of doing so constitutes copyright infringement.[4]

    1)   <u>Mary Kay's copyright claim fails under the Fair Use Doctrine.</u>

In the copyright realm, fair use is an affirmative defense that can support dismissal of the claim. *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist*., 27 F.4th 313, 320 (5th Cir. 2022). The fair use defense is usually teed up at summary judgment. *Id*. And, although the fair use defense contains mixed questions of law and fact, where the Court has facts sufficient to evaluate each of the statutory factors of the fair use defense, it may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work (quotations omitted). *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985).

In the *Bell* case, the plaintiff-author sued the defendant-school district for re-printing on the defendant's twitter account the entirety of a one-page motivational passage from a 72-page copyrighted book the plaintiff had written. *Bell*, 27 F.4th at 319. The defendant did not seek permission before publishing the tweet with the quoted passage, but it did credit the plaintiff as

---

[2] Complaint, at ¶¶ 16, 47-48.
[3] Id. at ¶¶ 28-29, and App. A; App. 212-220.
[4] Id. at ¶¶ 31-32, 51-57, and App. A.

the author. *Id*. The plaintiff sued for copyright infringement, and both the district court and the Fifth Circuit found that the defendant's use of the passage constituted fair use and dismissed the plaintiff's complaint. *Id*. at 325. A like result is warranted here because facts sufficient to evaluate each of the statutory factors of the fair use defense are readily available from the Complaint and a review of the Book.

The fair-use doctrine balances the "inherent tension" between copyright's interests in protecting author's works and permitting others to reference them in cultural conversation. *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 575 (1994). Because the overarching goal of copyright is to stimulate intellectual activity for the public good, courts have long recognized a "limited privilege in those other than the owner of a copyright to use the copyrighted material in a reasonable manner without the owner's consent." *Fisher v. Dees*, 794 F.2d 432, 435 (9th Cir. 1986)(quotation omitted). This privilege applies when "rigid application of the copyright statute" would "stifle the very creativity" it is meant to foster. *Stewart v. Abend*, 495 U.S. 207, 236 (1990)(quotation omitted).

The four statutory factors to be considered in determining whether to apply the fair use doctrine are: 1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. The four factors are not exclusive. *Harper & Row Publrs. v. Nation Enters.,* 471 U.S. 539, 560 (1985). All are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. A fair-use defense can succeed even if one or more factors favor the claimant. *See id*.

a)      Factor one.

The first factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). The first consideration is commerciality—"whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *See Harper & Row*, 471 U.S. at 562 (quotation omitted). The second consideration is whether the user acted in good faith. *Google LLC v. Oracle Am., Inc.*, ——— U.S. ———, 141 S. Ct. 1183, 1204 (2021). And the third consideration is whether the use is "transformative," meaning it "adds something new" to the copyrighted work. *Id.* at 1203.

Cook admits that the Book is to be sold to the public, meaning that it is of a commercial nature. However, Mary Kay does not and cannot provide evidence that Cook did not act in good faith. To the contrary, as Mary Kay admits in its Complaint and can be seen by a review of the Book, for every single quoted passage from the Copyrighted Works, Cook identified Mary Kay Ash as the author and cited to the source.[5] Cook did not plagiarize the Copyrighted Works and fail to identify the source; she did just the opposite.[6] Indeed, the following passage from the Preface of the Book shows precisely the nature of Cook's Book and her reasoning for writing same, which in no way establishes bad faith on Cook's part:[7]

---

[5] App. 212-220.
[6] Id.
[7] App. 008.

> Mary Kay shared her love of God with those around her. She also encouraged others to share the things for which they were grateful. Many times, when women would ask Mary Kay what they could do to thank her for her influence in their lives, I would hear her say, "Pass it on."
>
> That's why I'm writing this book—not only to pass on the stories and lessons I learned from Mary Kay, but to share how they impacted my Christian walk both at work and with my family. Just as Mary Kay conveyed the love of God to me and to others, my hope is to share her faith, wisdom, and wit with you.

Like the Fifth Circuit found in *Bell*, this shows good faith on the part of Cook. *Bell*, 27 F.4th at 322-23. Conversely, Mary Kay has no evidence of bad faith on the part of Cook in writing the Book.

Furthermore, a plain reading of Mary Kay's Complaint establishes that the Book is indeed transformative. The entire genesis of the Book, which is nearly 200 pages long, is Cook's own memories of her interactions with Mary Kay Ash.[8] Cook merely cites to bits and pieces of passages from four separate Copyrighted Works and, again, clearly gives credit to the source in each instance.[9] The Book is not merely a re-hashing of the Copyrighted Works. Accordingly, factor one weighs in favor of a finding of fair use.

      b)     Factor two.

In looking to the nature of the copyrighted work, fair use is more likely to be found in factual works than in fictional works. *Abend*, 495 U.S. at 237. To determine the nature of the work, the Court is to consider whether the work has been appropriated for its "expressive elements," rather than to disseminate "the underlying facts." *Harper & Row*, 471 U.S. at 563–64.

---

[8] App. 002-200.
[9] App. 212-220.

The Court is also to consider whether the copyrighted work has been published, as the scope of fair use is "narrower with respect to unpublished works." *Id.*

Here, it is not disputed that the Book is a factual memoir of first-hand recollections of real life events from Cook's perspective, not a fictional work.[10] Further, it is not disputed that the Copyrighted Works were published; indeed, all of them were published more than 25 years ago.[11] This broadens the scope of fair use. Therefore, factor two weighs in favor of a finding of fair use.

        c)      Factor three.

The third fair-use factor examines the amount and substantiality of the portion used in relation to the copyrighted work as a whole. 17 U.S.C. § 107(3). The Court is to consider whether the amount copied is either a quantitatively or qualitatively significant part of the original. *See Campbell*, 510 U.S. at 586–87.

Cook's Book consists of 14 chapters and nearly 200 pages of her own personal memories of her interactions with Mary Kay Ash.[12] Mary Kay's Complaint identifies a total of approximately 23 *sentences* of quoted content from four different Copyrighted Works in the entire 200 *pages* of Cook's Book.[13] It cannot seriously be argued that the quoted portions of the Copyrighted Works in the Book constitute a quantitatively or qualitatively significant part of same. Factor three weighs in favor of a finding of fair use.

        d)      Factor four.

The fourth factor examines "the effect of the use" on the market for and value of the copyrighted work. 17 U.S.C. § 107(4). The Court is to consider actual market harm but, more

---

[10] App. 002-200.
[11] Complaint, at App. A.
[12] App. 002-200.
[13] Complaint, at App. A.

broadly, whether widespread use of the work in the same infringing fashion "would result in a substantially adverse impact on the potential market" for the original work and any derivatives. *Campbell*, 510 U.S. at 590. "This last factor is undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

Once more, because of the miniscule amount of quoted content from the Copyrighted Works included in the Book, they cannot and do not cause a substantially adverse impact on the potential market for the Copyrighted Works. *See Bell*, 27 F.4th at 325 ("The tweets do not reproduce such a substantial portion of Winning Isn't Normal "as to make available a significantly competing substitute" for the original work"). To be sure, as the court held in *Bell*, if anything, the properly attributed quotations of short passages from the Copyrighted Works in the Book might actually bolster interest in the Copyrighted Works. *See id*.

Furthermore, Mary Kay has not and cannot put forth any actual evidence that the publication of the Book has resulted in a substantially adverse impact on the potential market for the Copyrighted Works. As such, factor four weighs in favor of a finding of fair use.

Tallying up the fair use factors, all four support a finding that the Book is protected under the Fair Use doctrine. This conclusion comports with the "ultimate test of fair use": whether copyright law's goal of promoting creativity would be better served by allowing the use than preventing it. *Id*. at 325. In this case, that goal would be better served by allowing the Book than by allowing Mary Kay to silence it. Accordingly, the Court should dismiss Mary Kay's copyright infringement claim.

       2)     <u>Mary Kay has no evidence of damages.</u>

In addition or in the alternative, even if the fair use factor does not mandate dismissal of Mary Kay's copyright infringement claim, the claim should be dismissed by way of summary

judgment because Mary Kay has not put forth any competent evidence of damages that it has allegedly suffered as a result of Cook's purported copyright infringement.

17 U.S.C. § 504(a) provides that a copyright infringer is liable for either "(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(b) provides the following measure of damages for copyright infringement:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

In its Complaint, Mary Kay pled for all of the above in terms of its copyright damages.[14] However, Mary Kay cannot establish any actual evidence of damages recoverable for copyright infringement, nor any profits attributable to same. Thus, Cook is entitled to summary judgment.

To be sure, in her discovery requests served last Spring, Cook specifically asked Mary Kay to identify with particularity all of its damages, including those attributable to copyright infringement, and in its response served on April 27, 2022, Mary Kay responded as follows:[15]

### INTERROGATORY NO. 15:

Identify with particularity all damages you contend you suffered as a result of any acts or omissions of Cook and describe the legal and factual basis for your contention, including by stating the amount of such damages, describing the method of calculating such damages, providing the data used to calculate such damages, and explaining how Cook caused such damages.

### ANSWER:

Mary Kay objects to this Interrogatory because it is premature and because it seeks expert testimony. Subject to the objections, Mary Kay states that it has not yet calculated its damages, in part, because Cook has not yet provided sufficient information in discovery to allow Mary Kay to answer this Interrogatory. Mary Kay will supplement its response to this Interrogatory after additional discovery.

---

[14] Complaint, at ¶¶ 57-58.
[15] App. 245.

Shortly after Mary Kay served this answer to Cook's discovery, Cook served her own responses to Mary Kay's discovery requests in May 2022, which included interrogatory answers and production of more than 2,500 pages of documents. Yet, eight months later, Mary Kay still has not supplemented its answer to this interrogatory inquiring about its purported damages. Moreover, as stated above, the expert designation deadline expired on January 3, 2023. FED. R. CIV. P. 26(a)(2)(A)-(B), (D)(1). However, Mary Kay never designated an expert on damages, or any expert at all.

This case is now less than 90 days from trial and has been pending for 15 months; however, Mary Kay still has not detailed or provided any evidence of damages that it purportedly suffered as a result of Cook's publication of the Book. As a result of Mary Kay's failure and refusal to put forth such evidence of damages, despite it being specifically requested in discovery, this claim should be dismissed.

**B)    False Endorsement Claim (Second Cause of Action).**

In its Complaint, Mary Kay alleges that Cook uses words, terms, names, and photographs which are likely to deceive consumers into wrongfully believing that the Book is in some way sponsored, endorsed, approved by, affiliated, connected, or otherwise associated with Mary Kay.[16] More specifically, Mary Kay alleges that the Book was written from the perspective of a trusted friend of Mary Kay Ash and infringes on the likeness of Ms. Ash with the unauthorized use of her words and well known persona in a manner that creates consumer confusion of an endorsement that does not exist.[17] According to Mary Kay's Complaint, as a result of Cook's actions, it has suffered significant monetary harm including, but not limited to, loss of sales,

---

[16] Complaint, at ¶ 64.
[17] Id. at ¶ 65.

damage to the value of its IP, harm to the goodwill associated with its family of brands, and damage to its existing and potential business relations.[18]

Under the Lanham Act, any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any ... name, symbol, or device, or any combination thereof ... which ... is likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a). Among other things, the Lanham Act provides a cause of action to combat consumer confusion about a person's affiliation, such as a false endorsement or false advertising. 15 U.S.C. § 1125(a)(1); *Klayman v. Judicial Watch, Inc.,* 6 F.4th 1301, 1314 (D.C. Cir. 2021), *cert. denied*, No. 21-1264, 2022 WL 1528530 (U.S. May 16, 2022). This provision "prohibits 'false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device.' " *Dryer v. Nat'l Football League*, 814 F.3d 938, 944 (8th Cir. 2016) (quotations omitted).

To establish a false endorsement claim, the plaintiff must prove that the defendant made statements that are either "literally false as a factual matter" or "literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers." *Id*. (quotations omitted). Finally, a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff. *Lexmark Intern., Inc. v. Static Control Components, Inc*., 572 U.S. 118, 133 (2014).

---

[18] Id. at ¶ 37.

First, Mary Kay has no evidence that Cook made any statements in the Book about Mary Kay that are literally false or convey a false impression or are likely to deceive consumers.

In addition, Mary Kay has no evidence that it has suffered any economic or reputational injury from Cook's alleged unauthorized use of Mary Kay Ash's words or likeness in the Book, nor does it have any evidence that any consumers have withheld any trade from Mary Kay as a result of the Book. Again, Cook specifically asked Mary Kay to identify its damages for all of its causes of action, including its Lanham Act claim, and Mary Kay has failed to do so.[19] Thus, summary judgment is proper, and this cause of action should be dismissed.

## C)      Breach of Contract Claim (Third Cause of Action).

Mary Kay alleges that Cook was employed by Mary Kay from 1974 through July 1, 2017, including as a personal assistant to Ms. Ash and, finally, as director of the Mary Kay Museum.[20] According to Mary Kay, during her employment, Cook agreed to the terms of a Non-Disclosure Agreement ("NDA") and Employment Handbook.[21]

Mary Kay alleges that during her employment, Cook was provided certain unidentified proprietary information of Mary Kay's, that under the NDA and Employee Handbook, Cook agreed not to disclose or use any such proprietary information for her own benefit, and that Cook breached the NDA and Employee Handbook by using Mary Kay's proprietary information for her own benefit and the benefit of others.[22]

In order to establish a breach of contract by Cook, Mary Kay must prove the following: (1) a valid contract; (2) performance or tendered performance by Mary Kay; (3) breach of the

---

[19] App. 245.
[20] Id. at ¶ 18.
[21] Id. at ¶ 19.
[22] Id. at ¶¶ 19-20, 73.

contract by Cook; and (4) damages sustained by Mary Kay as a result of that breach. *Williams v. First Tennessee Nat. Corp.*, 97 S.W.3d 798, 802 (Tex. App. – Dallas 2003, no pet.).

First, one of the "contracts" alleged to exist between Mary Kay and Cooks is the Mary Kay Employee Handbook, which simply is not a contract at all. As for the Non-Disclosure Agreement (NDA), it can constitute a valid contract. However, Mary Kay has not and cannot put forth evidence that Cook breached an NDA with Mary Kay, nor any evidence of damages. The same holds true for the Employee Handbook (if it even constitutes a contract).

To the contrary, Mary Kay alleges in its Complaint that it provided Cook access to supposed "proprietary information" in exchange for Cook's promise not to use or disclose same, and that Cook breached the NDA and Employee Handbook by using Mary Kay's proprietary information for her own benefit and the benefit of others.[23]

However, Mary Kay has produced no evidence of what "proprietary information" it supposedly provided Cook during her employment. Indeed, Cook specifically asked Mary Kay in discovery to identify what proprietary information or trade secrets it claims to have provided to her during employment, but Mary Kay refused to answer:[24]

> **INTERROGATORY NO. 9:**
>
> Identify with particularity each trade secret and/or item of proprietary information you contend you provided to Cook during her employment with you, including by identifying the person or entity that provided such information to Cook, and describe the legal and factual basis for your contention that each such item constituted a trade secret and/or proprietary information.
>
> **ANSWER:**
>
> Mary Kay objects to this Request because it is overly broad and unduly burdensome. Subject to the objections, Mary Kay states that it is still reviewing the Book and will supplement this response as required and after additional discovery.

---

[23] Complaint, at ¶ 73.
[24] App. 243.

Similarly, Cook specifically asked Mary Kay in discovery to identify what proprietary information or trade secrets Cook allegedly used for her own benefit or disclosed to others in connection with her publication of the Book, and again Mary Kay refused to answer:[25]

> **INTERROGATORY NO. 10:**
>
> Identify with particularity each trade secret or item of proprietary information that you contend Cook misappropriated, used or disclosed, and describe the legal and factual basis for your contention that each such item constituted a trade secret or proprietary information, including by describing all steps you took to protect the secrecy of such information.
>
> **ANSWER:**
>
> Mary Kay objects to this Request because it is overly broad and unduly burdensome. Subject to the objections, Mary Kay states that it is still reviewing the Book and will supplement this response as required and after additional discovery.

To date, despite the fact that this case is less than 90 days from trial, Mary Kay has never supplemented these discovery responses, and it has not provided a shred of evidence as to what proprietary information Cook was provided by Mary Kay and what proprietary information Cook used or disclosed. Nor does Mary Kay have any evidence of any other breach of the NDA or Employee Handbook.

Finally, as with Mary Kay's other causes of action, it has no evidence of any damages that it has suffered as a result of Cook's alleged breach of contract, despite being asked to provide evidence of same in discovery.[26]

Accordingly, because Mary Kay cannot put forth evidence of breach or damages, its breach of contract claim should be dismissed.

**D)      Common Law Misappropriation Claim (Fourth Cause of Action).**

Mary Kay also asserted a claim against Cook for common law misappropriation, claiming that Cook allegedly took and used Mary Kay's proprietary information, which was

---

[25] App. 243.
[26] App. 245.

created through the use of labor, skill, and money by Mary Kay employees, and used such information in the Book.[27]

As with Mary Kay's breach of contract claim, Mary Kay has no evidence of any "proprietary information" that Mary Kay created through its own extensive time, labor, skill, and money and was provided to Cook.[28] Additionally, Mary Kay has no evidence of any "proprietary information" that Cook has used in competition with Mary Kay.[29] Finally, like its other causes of action, Mary Kay has no evidence that it incurred any actual damage or loss which was proximately caused by any alleged use of its proprietary information by Cook.[30] Accordingly, Cook is entitled to summary judgment on this cause of action.

**E)    Breach of Fiduciary Duty Claim (Fifth Cause of Action).**

Mary Kay alleges that, as an employee of Mary Kay, Cook owed fiduciary duties to Mary Kay during employment of loyalty, utmost good faith, and to protect Mary Kay's proprietary information.[31] Mary Kay alleges that Cook breached her fiduciary duties to Mary Kay by allegedly using Mary Kay's proprietary information in the Book.[32]

It is true that employees owe a fiduciary duty to their employers and are obligated to act in their employer's interests during employment, and after employment, an employee continues to have a fiduciary duty not to divulge his or her employer's trade secrets or proprietary information. *Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 201-02 (Tex. 2002).

But once more, Mary Kay has not and cannot put forth any evidence of any trade secrets or proprietary information that it supposedly shared with Cook during her employment.[33] In

---

[27] Complaint at ¶¶ 76-79.
[28] App. 243.
[29] Id.
[30] App. 245.
[31] Id. at ¶¶ 6, 84-86.
[32] Id. at ¶¶ 87.
[33] App. 243.

addition, Mary Kay has not and cannot put forth any evidence of any trade secrets or proprietary information shared with Cook that she used in the Book or otherwise.[34] It is incumbent upon Mary Kay to produce evidence as to what proprietary information it provided to Cook and what proprietary information Cook allegedly improperly used. Mary Kay refuses to answer and provide evidence of either.

Finally, Mary Kay has not and cannot produce any evidence of damages as a result of Cook's alleged breach of fiduciary duty.[35] Accordingly, this cause of action should be dismissed.

**F.   Tortious Interference with Contract Claim (Sixth Cause of Action).**

Mary Kay alleges that it has standard agreements with its Sales Force members which prohibit the members from promoting, distributing, or selling products that are not official Mary Kay products.[36] Mary Kay alleges that Cook knew of these agreements and that she interfered with the agreements by convincing Sales Force members that Mary Kay endorsed the Book and thus persuaded them to promote, distribute, and sell the Book.[37] As such, according to Mary Kay, by encouraging Sales Force members to promote, distribute, and sell the Book, Cook induced the members to violate their agreements with Mary Kay.[38] Finally, Mary Kay claims that as a result of Cook's actions, it has suffered actual damages.[39]

Mary Kay must prove the following elements of its tortious interference with existing contract claim against Cook: (1) an existing contract subject to interference; (2) a willful and intentional act of interference with the contract by Cook; (3) that proximately caused Mary Kay to suffer actual damages or loss. *Prudential Ins. Co. of America v. Financial Review Services, Inc.*, 29 S.W.3d 74, 77 (Tex. 2000). The requirement concerning "willful and intentional"

---

[34] Id.
[35] App. 245.
[36] Id. at ¶ 91.
[37] Id. at ¶¶ 92-93.
[38] Id. at ¶ 94.
[39] Id. at ¶ 96.

requires some direct evidence of a willful act of interference by the defendant. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex.1993). The interfering party must know of the existence of a contract between the plaintiff and a third party or have knowledge of facts that would lead a reasonable person to conclude that a contract existed. *Armendariz v. Mora*, 553 S.W.2d 400, 406 (Tex. App. – El Paso, 1977). The interference must proximately cause damage or harm. *State National Bank of El Paso v. Farah Mfg*., 678 S.W.2d 661, 689 (Tex. App. – El Paso, 1984). The measure of damages for tortious interference is the same for breach of contract; the plaintiff is to be put in the same economic position as if the contract had not been breached. *Armendariz*, 553 S.W.2d at 406; *Hill v. Heritage Res., Inc*., 964 S.W.2d 89, 123 (Tex. App.—El Paso 1997, pet. denied).

Mary Kay has not and cannot put forth evidence that Cook willfully and intentionally interfered with any agreements between it and its Sales Force members. Mary Kay has not and cannot put forth evidence that any Sales Force members distributed or sold even one copy of the Book. Thus, Mary Kay has no evidence that agreements with any Sales Force members have been breached.

Furthermore, as stated above, the measure of damages for a tortious interference claim is to put the plaintiff in the same position as if the agreement had not been breached. Here, Mary Kay has not and cannot put forth any evidence of any actual damages it has suffered as a result of Cook's alleged interference with its agreements with its Sales Force members.[40] Accordingly, this cause of action should be dismissed.

---

[40] App. 245.

## V.

## <u>CONCLUSION</u>

Rule 56 of the Federal Rules of Civil Procedure mandates the granting of summary judgment in Cook's favor if Cook can conclusively establish an affirmative defense and if Mary Kay cannot put forth evidence at this stage to raise a fact issue on each element of its claims against Cook. Cook has conclusively established as a matter of law its fair use defense to Mary Kay's copyright infringement claim.

Furthermore, Mary Kay has not put forth evidence on each challenged cause of action. Specifically, despite being asked in discovery, Mary Kay has not provided a shred of evidence of any proprietary information it shared with Cook and that Cook allegedly took and used. Finally, absent some evidence of damages allegedly suffered as a result of Cook's actions, which Mary Kay has wholly failed to provide, every one of Mary Kay's causes of actions fails as a matter of law.

Accordingly, Cook's motion for summary judgment should be granted in its entirety.

## VI.

## <u>PRAYER</u>

Defendant respectfully pray that the Court grants her motion for summary judgment, enters an order dismissing Plaintiff's claims against her with prejudice and awarding Defendant her costs, and for such other relief to which Defendant may show herself justly entitled.

Respectfully submitted,

By: */s/ Eric C. Wood*
Eric C. Wood
State Bar No. 24037737
eric@brownfoxlaw.com
BROWN FOX PLLC
6303 Cowboys Way, Suite 450
Frisco, Texas 75034
Phone: (214) 327-5000
Fax: (214) 327-5001

ATTORNEYS FOR DEFENDANT
JENNIFER BICKEL COOK

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary because this document is being filed with the Court's electronic-filing system on January 17, 2023.

*/s/ Eric C. Wood*
Eric C. Wood